QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Ognjen Zivojnovic (Bar. No. 307801)
ogizivojnovic@quinnemanuel.com
Haihang Wang (Bar No. 339727)
haihangwang@quinnemanuel.com
Jeremy Thomas (Bar No. 357522)
jeremythomas@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (Bar No. 245782)
marktung@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Counsel for Defendant TikTok Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

SHOPSEE, INC.,

Plaintiff,

v.

TIKTOK INC.,

Defendant.

Case No. 3:26-cv-00703-AMO

**DEFENDANT TIKTOK INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: June 25, 2026
Time: 2:00 p.m.
Place: Courtroom 10
Judge: Hon. Araceli Martínez-Olguín

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 25, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA, Defendant TikTok Inc. ("TikTok") will and hereby does move this Court for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), on the ground that Claims 1 through 19 of U.S. Patent No. 11,134,316 ("the '316 Patent") are patent-ineligible under 35 U.S.C. § 101. This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the attached Exhibit A, all pleadings and records on file in this action, and such oral argument as the Court may entertain.

## STATEMENT OF REQUESTED RELIEF

TikTok Inc. moves for judgment on the pleadings under 35 U.S.C. § 101 to dismiss this case with prejudice because Claims 1 through 19 of U.S. Patent No. 11,134,316 ("the '316 Patent") are patent-ineligible under 35 U.S.C. § 101.

DATED: April 13, 2026

Respectfully submitted,

/s/ Ognjen Zivojnovic
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Ognjen Zivojnovic (Bar No. 307801)
ogizivojnovic@quinnemanuel.com
Haihang Wang (Bar No. 339727)
haihangwang@quinnemanuel.com
Jeremy Thomas (Bar No. 357522)
jeremythomas@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (Bar No. 245782)
marktung@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Counsel for Defendant TikTok Inc.*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. ’316 Patent Specification ........ 2

B. ’316 Patent Claims ........ 4

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 6

A. The Court and Parties Need Not Litigate an Invalid Patent ........ 6

B. *Alice* Step One: The Claims Are Directed to an Abstract Idea ........ 7

C. *Alice* Step Two: The Claims Lack Any Inventive Concept ........ 15

V. CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*10Tales, Inc. v. TikTok Inc.*,
No. 2024-1792, 2026 WL 879632 (Fed. Cir. Mar. 31, 2026) ........ 2, 3, 13

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) ........ 13, 14

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) ........ 14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ........ 6, 15

*Angel Techs. Grp., LLC v. Meta Platforms, Inc.*,
No. 2022-2100, 2024 WL 4212196 (Fed. Cir. Sept. 17, 2024) ........ 10, 11

*ART Rsch. & Tech. LLC v. Google LLC*,
No. 24-cv-04898-AMO, 2025 WL 2772608 (N.D. Cal. Sep. 29, 2025) (Martínez-Olguín, J.) ........ 2, 7, 8, 11, 12, 17

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ........ 17

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ........ 5

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
113 F.4th 1359 (Fed. Cir. 2024) ........ 12, 14

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ........ 10

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017) ........ 6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) ........ 9

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020) ........ 8

*Elec. Power Grp.., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ........ 14, 16

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ........ 11

*Eolas Techs. Inc. v. Amazon.com, Inc.*,
No. 2022-1932, 2024 WL 371959 (Fed. Cir. Feb. 1, 2024) ........ 12

*Ginegar LLC v. Slack Techs., Inc.*,
No. 22-cv-00044-WHO, 2022 WL 2064978 (N.D. Cal. June 8, 2022) ........ 13

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ........ 9

*Innovaport LLC v. Target Corp.*,
No. 2024-1545, 2026 WL 321266 (Fed. Cir. Feb. 6, 2026) ........ 11

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ........ 12, 17

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ........ 13

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018) ........ 6, 11, 12

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) ........ 9

*Mayo Collaborative Servs. v. Prometheus Lab'ys., Inc.*,
566 U.S. 66 (2012) ........ 6

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ........ 6

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) ........ 2, 8, 9

*P2i Ltd. v. Favored Tech USA Corp.*,
No. 23-cv-01690-AMO, 2025 WL 1724996 (N.D. Cal. June 20, 2025)
(Martínez-Olguín, J.) ........ 6, 7, 8

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ........ 14

*Rady v. Bos. Consulting Grp., Inc.*,
No. 2022-2218, 2024 WL 1298742 (Fed. Cir. Mar. 27, 2024) ........ 9, 10

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) ........ 6, 14

*Rideshare Displays, Inc. v. Lyft, Inc.*,
No. 2023-2033, 2025 WL 2751580 (Fed. Cir. Sep. 29, 2025) ........ 13

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) ........ 12

*Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355 (Fed. Cir. 2023) ........ 7

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017) ........ 6

*U.S. Patent No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373 (Fed. Cir. 2026) ........ 16

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ........ 8

## Statutes

Rule 12(c) ........ 6

35 U.S.C. § 101 ........ 1, 6, 7, 18

## Other Authorities

Charles Eckert, *The Carole Lombard in Macy's Window*, 3 Q. Rev. Film Stud. 1, 1–21 (1978), https://doi.org/10.1080/10509207809391376 ........ 10

*Photoplay* (Jan. 1932), https://archive.org/details/photo42chic/page/n67/mode/2up ........ 10

Randall Poe, *Invasion of the Movie Product-Pushers*, Across the Board (Jan. 1984), https://www.industrydocuments.ucsf.edu/docs/kthc0052 ........ 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

TikTok moves for judgment on the pleadings that the asserted ’316 Patent is invalid under 35 U.S.C. § 101. In *Alice* Step One, the claims are directed to an abstract idea: annotating video with product and social media information. In *Alice* Step Two, the claims lack technical implementation details to save them from patent ineligibility.

The ’316 Patent is not directed to solving any technical problem or improving computer technology. Instead, the focus of the ’316 Patent is on maximizing "revenue" by manipulating "consumer behavior"—a fundamentally abstract goal. The ’316 Patent starts by observing that "media companies and advertisers are facing a dramatic shift in consumer behavior regarding online entertainment" because "[m]any consumers view commercials as unwanted interruptions." ’316 Patent at 1:30-35. The ’316 Patent then addresses this perceived "reduc[tion] [of] potential revenue for advertisers" and a "miss[ed] … opportunity for added revenue" rather than any technological problem. *Id.* at 1:42-45, 2:2-4. And the "benefits" described in the Summary of the Invention "include additional merchandising revenue from shopping, aggregation of user metadata, and the social interaction interface" rather than any improvement to computer technology. *Id.* at 4:8-16.

The ’316 seeks to achieve its abstract goal by deploying an equally abstract idea: annotating video with product and social media information. That is all the claims require. Receive a video. Process the video to identify and track objects in it. Associate the objects with selectable product information. Add a social media overlay. Distribute the result.

That is the entire claimed invention—a series of functional steps, each describing a desired outcome, none specifying how it is achieved. Receiving, processing, and distributing video data are quintessential abstract concepts. The claim limitations directed to processing the video to identify and track objects fare even worse, with the specification disclosing that those steps can be performed by a human "administrator" who "progresses through the video," "locates a visual item that is a product to be featured," "click[s] the item on the screen," and then "move[s] the box, circle, or marker if the item moves throughout the images." ’316 Patent at 12:24-32. The claims recite associating a video with product information and social media using "layers," but claim construction

briefing in the Western District of Texas confirmed the ’316 Patent fails to disclose any algorithm for generating those “layers,” merely telling the reader to implement them using generic software and hardware. Indeed, the specification expressly states that the claimed invention “is provided by hardware and/or software components configured to operate in accordance with ***known*** techniques for the provision of information to users of communication devices.” ’316 Patent at 10:44-47 (emphasis added).

Accordingly, the ’316 Patent claims nothing more than the abstract idea of annotating video with product and social media information for the purpose of maximizing revenue. Such claims reciting “generalized steps of collecting, analyzing, and presenting information, using nothing other than the conventional operations of generic computer components” are abstract. *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1293 (Fed. Cir. 2024). This Court recently dismissed similar patents covering video annotation, interactive overlays, and social networking for being directed to patent ineligible abstract ideas. *ART Rsch. & Tech. LLC v. Google LLC* (“*ART*”), No. 24-cv-04898-AMO, 2025 WL 2772608, at *4–8 (N.D. Cal. Sep. 29, 2025) (Martínez-Olguín, J.).

The Federal Circuit also recently upheld dismissal of patent claims against TikTok directed to the intersection of “digital media” and “social network[ing].” *10Tales, Inc. v. TikTok Inc.*, No. 2024-1792, 2026 WL 879632, at *3–4 (Fed. Cir. Mar. 31, 2026). The ’316 Patent is equally patent ineligible. The Court should find the ’316 Patent also invalid and enter judgment on the pleadings.

## II. BACKGROUND

### A. ’316 Patent Specification

The ’316 Patent is titled “Integrated Shopping Within Long-Form Entertainment.” Its specification frames the problem as a commercial, rather than technical, challenge: “media companies and advertisers are facing a dramatic shift in consumer behavior regarding online entertainment” because “[m]any consumers view commercials as unwanted interruptions.” ’316 Patent at 1:30-35. The consequence is that “advertising revenue is greatly reduced for content providers, producers, and streaming services,” while online entertainment services “miss an opportunity for added revenue without advertisers populating their sites.” *Id.* at 1:56-58, 2:2-4.

The ’316 Patent’s stated goal is equally commercial: generate “additional merchandising revenue from shopping, aggregation of user metadata, and the social interaction interfaces between viewers,” all of which “bring[] more sets of eyes to the media show, thus substantially increasing advertising revenues.” *Id.* at 4:9-11, 18-19. The specification does not describe overcoming any limitation of existing video-processing technology, any deficiency in computer hardware or software, or any technical obstacle that the patent purports to overcome. Its goal is the same that media companies have strived for long before the Internet existed: make more money.

The ’316 Patent seeks to achieve this commercial goal by annotating a video with product and social media information. But it does so via a series of functional steps (shown in Figure 2) that are implemented with “hardware and/or software components configured to operate in accordance with ***known*** techniques.” ’316 Patent at 10:44-47 (emphasis added). Indeed, each step can be either performed by a human or implemented using off-the-shelf technology.

***First***, an “administrator progresses through the video and locates a visual item that is a product to be featured, and can click the item on the screen, resulting in a pause of the video. An adjustable box, circle or marker appears on the screen and is moved and resized to denote the location of the object.” *Id.* at 12:24-29. ***Second***, the administrator “move[s]” the “box, circle, or marker if the item moves throughout the images until the item is no longer visible.” *Id.* at 12:29-32. ***Third***, for generating a “first interactive video layer including selectable video objects” and a “second interactive video layer having active sessions or conversations between users,” the specification merely instructs the reader to use well-known “programming languages,” such as “HTML 5, JavaScript, Angular 2.0, Cascading Style Sheets, C#, REST services, SQL.” *Id.* at 11:67-12:5, 13:46-52. ***Fourth***, for combining those layers into distributable video data, the specification similarly instructs the reader to use an off-the-shelf file format, a “.vtt file,” and existing “JavaScript and jQuery functions.” *Id.* at 23:42-58.

ShopSee’s claim construction positions in the Western District of Texas confirm that the ’316 Patent lacks any technical innovation and merely recites a set of desirable function steps. When pressed to identify the structure corresponding to Claim 18’s five “software modules,” ShopSee pointed not to any algorithm or specific implementation, but to the preamble’s generic recitation of

"at least one processor, an operating system configured to perform executable instructions, a memory, and a computer program including instructions executable by the digital processing device to create an application." Dkt. 73 at 18. ShopSee then directed the Court to the specification's explanation that a computer program is merely "a sequence of instructions, executable in the digital processing device's CPU, written to perform a specified task," which may be written in "various versions of various languages." *Id.* at 19 (quoting '316 Patent at 28:1-10). In other words, ShopSee's own position is that, aside from the functional claim language, the '316 Patent's only structure is a generic processor running generic software.

### B. '316 Patent Claims

The '316 Patent contains three independent claims: Claim 1 (method), Claim 17 (computer-readable media), and Claim 18 (system). Claims 2-16 depend from Claim 1; Claim 19 depends from Claim 18. Claim 1 recites:

> *A method for providing information on items, services, or songs in a video media comprising:*
>
> *(a)* ***receiving the video media having a plurality of visual or audio objects in one or more frames of the video media****;*
>
> *(b) processing the video media to generate a first interactive video layer, wherein the processing includes:*
>
> *(i)* ***identifying one or more of the plurality of visual or audio objects within the video media****,*
>
> *(ii)* ***associating product information to the one or more of the plurality of visual or audio objects to correspondingly form one or more items, services, or songs of interest****;*
>
> *(iii)* ***tracking the one or more items, services, or songs of interest through the one or more frames of the video media****; and*
>
> *(iv)* ***assigning a selectable visual indicator for each of the one or more items, services, or songs of interest, wherein the first interactive video layer is configured to display the selectable visual indicator****;*
>
> *(c)* ***generating a video data comprising the video media, the first interactive video layer, and a second interactive video layer, wherein the video data is configured to be provided to a user via a first media playback device and to at least one guest via a second media playback device, wherein the second interactive video layer***

> ***comprises a social media portion controllable by the user via the first media playback device, so as to interact with the at least one guest that is also a viewer of the video media through an interface displayed in the second interactive video layer via the second media playback device, wherein the second interactive video layer displays an interaction between the user and the at least one guest, and past interaction activity between a plurality of users in the social media portion, and wherein the user is capable of maintaining and toggling between a plurality of different conversations displayable in the social media portion in the second interactive video layer as an overlay to the video media displayed by the first media playback device, wherein the plurality of users either includes the user or does not include the user****; and*
>
> *(d)* ***distributing information associated with the one or more items, services, or songs in the video media to the user****.*

All independent claims boil down to the same five steps: (1) ***receive a video***; (2) ***identify and track objects in the video***; (3) ***associate them with selectable product information***; (4) ***add social media information***; and (5) ***distribute the result***. Every step—***receiving***, ***identifying and tracking***, ***associating***, ***generating***, ***distributing***—describes a desired result. None specifies how that result is achieved. As Exhibit A demonstrates, independent Claims 17 and 18 recite the same functional steps as Claim 1. Accordingly, Claim 1 is representative. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (claims may be treated as representative where no "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim" has been advanced).

The dependent claims add only conventional features. Claims 2 through 5 address the user's interaction with the product information layer: toggling layers on and off, selecting a visual indicator to view marketing information, purchasing the selected item, and completing the purchase while the video continues to play. These are routine user-interface and e-commerce functions. Claims 6 and 7 let users copy video clips to a list and collect data on user actions, both standard media-platform features. Claim 8 swaps one set of product information for another on the same objects, an ordinary content-management operation. Claims 9 through 11 extend the layering concept by adding a third interactive video layer with links to additional video, games, or merchandise, but introduce no new technical detail. Claim 12 limits the video media to a television episode or movie, narrowing the field of use without adding substance. Claim 13 requires that Claim 1's identification be performed

manually, whereas Claim 14 uses an unspecified computer program. Claim 15 recites that the interactive layers are unaffected by ad-blocking software but says nothing about how that result is achieved. Claims 16 and 19 add public and private conversation threads to the social media portion. None of the dependent claims adds any technical specificity.

## III. LEGAL STANDARD

Abstract ideas are not patent-eligible because they are the "building blocks of human ingenuity." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Courts apply a two-step framework. At step one, the Court determines whether the claims are directed to a patent-ineligible concept. *Id.* at 217. The inquiry is whether the claims are directed to "a specific means or method" for improving technology or "simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). At step two, the Court searches for an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself.'" *Alice*, 573 U.S. at 217–18 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys., Inc.*, 566 U.S. 66, 72–73 (2012)).

## IV. ARGUMENT

### A. The Court and Parties Need Not Litigate an Invalid Patent

Patent eligibility under Section 101 is a question of law routinely resolved at the pleading stage. *See RecogniCorp*, 855 F.3d at 1328 (affirming judgment on the pleadings under Section 101); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1338 (Fed. Cir. 2018) (same); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1341 (Fed. Cir. 2017) (same). This Court has done the same. *P2i Ltd. v. Favored Tech USA Corp.*, No. 23-cv-01690-AMO, 2025 WL 1724996, at *6 (N.D. Cal. June 20, 2025) (Martínez-Olguín, J.) (entering judgment on the pleadings under Rule 12(c)).

Patent-eligibility determination under Section 101 does not require claim construction or discovery. The Federal Circuit has "repeatedly affirmed [Section] 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic*

*Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting cases). This Court has done so as well. *See ART*, 2025 WL 2772608, at *8 (declining to hold claim construction hearing where patentee failed to "propose a specific claim construction … and explain why those circumstances must be resolved before the scope of the claims [could] be understood for Section 101 purposes" (quoting *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360–61 (Fed. Cir. 2023))).

The same is true here: ShopSee cannot avoid Section 101 review by pointing to its complaint allegations, the absence of claim construction, or the need for discovery. Its complaint's assertion that the '316 Patent is "innovative" (Dkt. 28, ¶ 2) is a legal conclusion the Court need not accept. *See ART*, 2025 WL 2772608, at *7 (disregarding conclusory allegations of inventiveness). Claim construction is unnecessary because ShopSee has taken the position that all claim terms carry their plain meaning, and TikTok's proposed constructions also do not introduce any technical specificity. *See* Dkt. 73 at 2, 6, 10, 14, 17–18. And fact or expert discovery adds nothing where the specification itself catalogs only "known technique[s]," generic hardware, standard programming languages, and a manual identification process performed by a human administrator. *See P2i*, 2025 WL 1724996, at *6 (rejecting argument that factual disputes preclude resolution at the pleading stage).

### B. *Alice* Step One: The Claims Are Directed to an Abstract Idea

The claims of the '316 Patent are directed to abstract ideas for monetizing video content—specifically, by annotating the video with product and social media information—not to any improvement in computer technology.

The '316 Patent seeks to address commercial problems and achieve commercial goals. The specification is upfront that the problem it seeks to solve is "a dramatic shift in consumer behavior" that is "increasingly problematic for advertisers." '316 Patent at 1:30-31, 53-54. The claimed solution—annotating the video with product and social media information—is equally abstract.

Adding product information to a video leads to "additional merchandising revenue from shopping." *Id.* at 4:9-10. Adding social media information similarly "results in the cross-pollination of the viewers" and "creates a mass user/viewer experience, which then brings more sets of eyes to the media show, thus substantially increasing advertising revenues." *Id.* at 4:12, 16-19. The Federal

Circuit has consistently held that claims focused on achieving commercial objectives implemented with generic technology are directed to abstract ideas. *See id.* at 10:46-47 (admitting platform is implemented using "known techniques for the provision of information to users of communication devices"); *see also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (claims directed to delivering targeted advertising through generic hardware found abstract because "the claimed invention is at most an improvement to the abstract concept of targeted advertising wherein a computer is merely used as a tool"); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714–15 (Fed. Cir. 2014) (integrating commerce into media content delivery is abstract).

Invalidating the '316 Patent does not require breaking new ground. In *ART*, this Court dismissed four patents covering video annotation, interactive overlays, social networking with video, and composite clip creation—the same technology as the '316 Patent. The parallels between *ART*'s patents (and especially *ART*'s '001 Patent) and the '316 Patent are unmistakable.

*ART*'s '001 Patent claimed "[a] method to annotate Playable Media Files in a social network," requiring: receiving a media file; creating an annotation; providing the annotation to a network server; specifying a location where the annotation should be embedded; embedding it; and encoding the annotation in a table of contents. *ART*, 2025 WL 2772608, at *1. The '316 Patent follows the same template. Both patents claim receiving media, processing it to add information at specified locations, and outputting a combined result. Both patents also incorporate aspects of social networking. Both patents are directed to abstract ideas.

Each limitation of the '316 Patent claims (***receiving a video***, ***identifying and tracking objects***, ***associating product information***, ***adding social media information***, and ***distributing the result***) is in furtherance of the abstract idea of annotating the video with product and social media information. Each merely recites a desired outcome using purely aspirational language. That is confirmed by ShopSee's inability to identify any algorithm or other structure for implementing the functional language of claim 18 aside from the generic hardware and software recited in the preamble. Dkt. 73 at 18–19. But that is not enough. Claims that "consist solely of result-orientated, functional language and omit any specific requirements as to how these steps of information manipulation are performed" are directed to abstract ideas. *Mobile Acuity*, 110 F.4th at 1292–93.

No claim limitation introduces any technical specificity. None changes the conclusion that the focus of the ’316 Patent claims is on an abstract idea.

***Receiving a video***. The claims start by receiving the video which is to be annotated. The Federal Circuit has repeatedly found this concept abstract. In *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357–58 (Fed. Cir. 2023), the Federal Circuit invalidated claims directed to “a method of ***receiving***, displaying, converting, storing, and transmitting digital ***video***” because those claims lacked “sufficient recitation of how the purported invention improve[d] the functionality” of the underlying system and were “recited at such a level of result-oriented generality that [they] amount[ed] to a mere implementation of an abstract idea.” *Id.* at 1358 (emphasis added) (quoting *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1152 (Fed. Cir. 2019)). The ’316 Patent’s “receiving” limitation suffers from the same deficiency: it describes the functional result of receiving video content without any recitation of how that result is achieved.

***Identifying objects in the video and tracking objects across frames***. Here, too, the ’316 Patent claims recite a high level outcome (identifying and tracking an object) without specifying any algorithm for achieving that outcome. Indeed, the independent claim expressly encompasses “manually” identifying objects. *See* dependent claim 13. The specification likewise confirms that the identifying and tracking can be performed by a human administrator watching the video, clicking on a product to mark its location, and then moving a box as the product changes position until it is no longer visible. *See supra* Section II.A. A claim broad enough to read on human activity is abstract. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (finding claims abstract because “humans have always performed these functions”).

But even claim 14’s “automatically [identifying] by a computer program” fares no better. Both the claim and specification only recite a desired outcome while referencing a generic “computer program” but without any implementational details. That is not enough. *See Mobile Acuity*, 110 F.4th at 1293.

The Federal Circuit addressed closely analogous claims in *Rady v. Bos. Consulting Grp., Inc.*, No. 2022-2218, 2024 WL 1298742 (Fed. Cir. Mar. 27, 2024). There, the Federal Circuit

concluded that "***identifying*** items by their unique physical features is a long-standing and well-established practice" and affirmed that "***tracking*** physical objects do[es] not make [the] claims any less abstract." *Id.* at *1, *3 (emphasis added) (citation omitted). The court also found that the "claims are not saved from abstraction merely because they recite components more specific than a generic computer." *Id.* at *3 (quoting *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018)).

The '316 Patent's identification and tracking limitations are even less specific. Unlike the claims in *Rady*, they do not even recite specialized hardware for performing the identification and tracking functions. *Id.* at *3. And merely instructing a reader to implement human activity using generic software does not save claims from abstractness. *See Angel Techs. Grp., LLC v. Meta Platforms, Inc.*, No. 2022-2100, 2024 WL 4212196, at *4 (Fed. Cir. Sept. 17, 2024) (holding claims directed to "identifying users in photos (e.g., tagging)" abstract because it is a "well-known activit[y] that can be performed in the human mind or with pencil and paper").

***Associating objects with product information and assigning clickable indicators on objects***. The next limitations are directed to tagging objects in a video with product information and placing a clickable indicator so that viewers can access the same, thereby annotating the video with product information. The '316 Patent specification acknowledges that these steps seek to exploit well-known consumer behavior: "viewers often emulate or desire the clothes, hairstyles, jewelry, electronics, cars, and other social and economic behaviors of the characters on their favorite TV shows or movies." *Id.* at 1:23-26.[1] This Court held the analogous activity abstract in *ART*, where the

---

[1] While not necessary for ruling on this motion, it is worth noting that costume designers have compiled lookbooks linking actors' wardrobe to retailers since at least the 1930s, when Hollywood studios transmitted wardrobe sketches and designer attributions to Bernard Waldman's Modern Merchandising Bureau for manufacture and sale in over 1,400 retail shops nationwide. Charles Eckert, *The Carole Lombard in Macy's Window*, 3 Q. Rev. Film Stud. 1, 1–21 (1978), https://doi.org/10.1080/10509207809391376 (Ex. B). Magazine editors have published "where to buy" columns keyed to products in editorial spreads for just as long. *Photoplay*, for example, ran a feature in January 1932 titled "Let Screen Clothes Be Your Guide to Wearable Fashions." *Photoplay* (Jan. 1932), https://archive.org/details/photo42chic/page/n67/mode/2up. Product placement catalogs have matched on-screen items to purchasing information for decades. *See* Randall Poe, *Invasion of the Movie Product-Pushers*, Across the Board (Jan. 1984), https://www.industrydocuments.ucsf.edu/docs/kthc0052.

claims required creating an annotation, specifying "a location … where said annotation should be embedded," and embedding it in the media file. *ART*, 2025 WL 2772608, at *1, *6.

The Court's reasoning applies with equal force here: the claims consist of "result-orientated, functional language" that describes what to annotate without explaining how, and the underlying activity was one "humans annotated by hand separate from the media itself," using tools such as "transparency sheets on overhead projectors, closed captions on TV broadcasts, and transparent map overlays." *Id.* at *6. The '316 Patent's "selectable visual indicators" are annotations by another name—markers placed on video to allow user access to product information. *See also Innovaport LLC v. Target Corp.*, No. 2024-1545, 2026 WL 321266, at *5 (Fed. Cir. Feb. 6, 2026) (holding that "linking products" is a "longstanding method[] of human activity, not new technological innovations"). The claim recites the result—objects linked to product information via indicators—without specifying any specific algorithm for rendering, positioning, or compositing those indicators. That does not render the claims patent eligible. *See Angel Techs.*, 2024 WL 4212196, at *4 (holding claims directed to "determining associations between the users, photos, and other descriptive information; and storing an association between a user identifier and a photo identifier" abstract).

The "selectable visual indicator" component of this limitation raises an additional concern: the claim demands that clickable icons be displayed in a separate video layer, but specifies no mechanism for doing so. The Federal Circuit addressed this exact deficiency in *Interval Licensing*, 896 F.3d 1335. There, the court examined claims directed to an "attention manager" that displayed information on a screen without interfering with the user's ongoing task. *Id.* at 1345. The court held that "the act of providing someone an additional set of information without disrupting the ongoing provision of an initial set of information is an abstract idea," observing that this "basic and longstanding practice can be found in, for example, a television station's use of a breaking news ticker across the bottom of the screen." *Id.* at 1344. The court further held that "the collection, organization, and display of two sets of information on a generic display device is abstract absent a 'specific improvement to the way computers [or other technologies] operate.'" *Id.* at 1345 (alteration in original) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)). And

critically, the court found that because the claim defined the "attention manager" only by its desired result—the non-interfering display of two information sets—"instead of claiming a solution for producing that result, the claim in effect encompasses all solutions." *Id.* The '316 Patent's selectable-indicator limitation suffers from the same defect. *See also Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017) (holding abstract claims directed to "using a marking affixed to the outside of a mail object to communicate information about the mail object"); *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 2022-1932, 2024 WL 371959, at *1 n.2, *7 (Fed. Cir. Feb. 1, 2024) (holding claims abstract where the patent described a system in which "the user is able to click on images, sound icons, video icons, etc., that link to other objects of various media types").

***Generating a social media overlay*.** This limitation is directed to further annotating the video with social media information. The fact that this now adds a second "layer" does not render the claim patent eligible. As the Federal Circuit held, "[t]he patent[s'] solution of organizing and displaying information in layers is an abstract idea." *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1382 (Fed. Cir. 2022). This Court adopted that holding in *ART*, embracing the analogy to "transparency sheets on overhead projectors, closed captions on TV broadcasts, and transparent map overlays." 2025 WL 2772608, at *6 (citing *IBM*, 50 F.4th at 1380). Just as a teacher overlays a transparency on a projector to add multiple layers of information to a base image, the '316 Patent overlays product and social media information onto a base video.

The Federal Circuit reinforced this point in *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359 (Fed. Cir. 2024). The patent there claimed a "templatized video-on-demand display" generated in three layers: a background screen, a display template with reserved areas layered on top, and content generated from video metadata to fill those reserved areas. *Id.* at 1363–64. The court found the claims abstract, reasoning that "receiving metadata and organizing the display of video content based on that metadata is abstract." *Id.* at 1368. It specifically rejected the argument that the three-layer template provided structural specificity sufficient to survive step one, holding that "the use of templates to create the electronic programming guide is not the claimed advance," and that "the combination of two abstract ideas does not render an abstract idea less abstract." *Id.* at 1368–69. The '316 Patent's three-layer arrangement—video, product information layer, social

media layer—is structurally parallel. If a three-layer electronic programming guide is abstract, then so is a three-layer video overlay with product and social media information.

The content of the second interactive video layer (social media information or user conversations) is independently abstract. It adds a conversation interface enabling viewers to switch between multiple public and private conversations while watching video. Viewers gathering to discuss a shared entertainment experience is as old as communal storytelling. There is a reason movie theaters remind attendees not to talk during the movie. Allowing users to switch between conversations via a "second interactive video layer" as opposed to turning left to talk to one person and turning right to talk to a second person does not save the claim from abstractness. *See Rideshare Displays, Inc. v. Lyft, Inc.*, No. 2023-2033, 2025 WL 2751580, at *6 (Fed. Cir. Sep. 29, 2025) (holding claims abstract where the "technological improvement more easily enables and facilitates human interactions, but it does not fundamentally alter or improve the way the technology itself functions"); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (holding that processing and routing electronic messages is abstract, analogizing to the longstanding practice of "people receiving paper mail to look at an envelope and discard certain letters, without opening them, from sources from which they did not wish to receive mail"); *Ginegar LLC v. Slack Techs., Inc.*, No. 22-cv-00044-WHO, 2022 WL 2064978, *7–10 (N.D. Cal. June 8, 2022) (holding claims directed to processing instant messages according to pre-established rules abstract, and rejecting arguments that user-experience benefits constituted improvements to the underlying technology). The reference to "social media" is also not a silver bullet that cures abstractness. *See 10Tales*, 2026 WL 879632, at *1 (affirming dismissal of claims directed to "a system for customizing or personalizing content based on user social network information").

***Distributing the result*.** Finally, asserted claim 1 concludes by distributing the video, product information, and social media information to a user as "video data." But as the Federal Circuit previously found yet again, "the concept of delivering user-selected media content to portable devices is an abstract idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). The patent there claimed a network-based media system that streamed content on demand to a handheld wireless device with a customized user interface. *See id.* at 1267–68. The

court found the claims "do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Id.* at 1269; *see also Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) ("The concept of providing out-of-region access to regional broadcast content is … a broad and familiar concept concerning information distribution that is untethered to any specific or concrete way of implementing it."). The common principle across both cases is that streaming content to a user's device—whether on-demand media, regional broadcasts, or video with product and social media information overlays—is the abstract concept of distributing information. That reasoning applies here, too.

Thus, the limitations of the '316 Patent independent claims are all directed to the abstract idea of annotating a video with product and social media information. But even if any of the constituent parts of that concept are separately analyzed, "[a]dding one abstract idea … to another abstract idea … does not render the claim non-abstract." *RecogniCorp*, 855 F.3d at 1327. The Federal Circuit has consistently held that aggregating multiple abstract steps produces only "a medley of mental processes that, taken together, amount only to a multistep mental process." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021); *see also Broadband iTV*, 113 F.4th at 1368 ("[T]he combination of two abstract ideas does not render an abstract idea less abstract.").

For example, the '316 Patent specification does not describe any synergy or technical interaction between the product information layer, the social media layer, and the video layer. It describes independent features, each implemented with generic components, stacked on top of one another. Whether viewed individually or in combination, these are abstract ideas. *See Elec. Power Grp.., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("[T]he claims are clearly focused on the combination of those abstract-idea processes.").

The dependent claims do not change the analysis. As described in Section II.B, the dependent claims add only routine user-interface controls, conventional e-commerce features, standard media-platform functions, field-of-use restrictions, and the manual/automatic identification split already

encompassed by Claim 1. None introduces any limitation that alters the character of the claims as a whole.

### C. *Alice* Step Two: The Claims Lack Any Inventive Concept

Because the claims are directed to abstract ideas, the Court must determine whether they nonetheless contain an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217 (citation omitted) (cleaned up). They do not.

The claims recite no new hardware, software, or algorithm. Instead, the claims recite desirable outcomes for achieving a commercial objective (increasing revenue). Any doubt on this issue was laid to rest by ShopSee's position on claim construction.

Claim 18 of the '316 Patent is directed to "software modules" that implement the abstract idea that is at the heart of all asserted claims, including, among others, "a software module for linking … items, services, or songs with marketing and/or purchasing information" and "a software module for the generation of a second interactive layer to display with the video media" for "toggling between a plurality of different conversations in social media portion in the second interactive video layer." Those are the core concepts underlying the abstract idea at issue here: annotating video with product and social media information. But when pressed to identify the corresponding algorithms or other structure in the claims or specification underlying these functional claim elements, the only "structure of the software modules in claim 18" that ShopSee was able to identify is the generic computer implementation recited in the claim's preamble: "a ***digital processing device*** comprising: at least one ***processor, an operating system*** configured to perform executable instructions, a ***memory***, and ***a computer program including instructions executable by the digital processing device to create an application*** for providing information on items, services, or songs in a video media." Dkt. 73 at 18. But recitation of such "generic computer components" is the quintessential "draftsman's art" corresponding to "simply stating the abstract idea while adding the words 'apply it,'" not an inventive concept. *See Alice*, 573 U.S. at 221 (citation omitted) (cleaned up).

The '316 Patent's own specification confirms the lack of any inventive concept. Here, too, ShopSee was unable to identify any algorithm or structure for the functional language of the '316 Patent claims beyond generic "software modules" in a generic "computer program or application,"

executed by a generic "CPU" (Dkt. 73 at 19) that can be found in virtually any type of device, including server computers, laptops, and even vehicles ('316 Patent at 26:31-37). In fact, the specification expressly admits that "[t]he functionality of the service platform 106" that implements the limitations of all '316 Patent claims "is provided by hardware and/or software components configured to operate in accordance with known techniques for the provision of information to users of communication devices." *Id.* at 10:44-47.

Indeed, none of the limitations of the '316 Patent independent claims contain any inventive concept. The Federal Circuit has repeatedly found that ***receiving a video*** is not an inventive concept. *U.S. Patent No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1376, 1379 (Fed. Cir. 2026) (holding that client applications receiving and recording "computer screen video" and associated data streams were "conventional, well-known components, operating according to their ordinary functions to manipulate conventional data streams" insufficient to supply an inventive concept). For ***identifying and tracking objects within the video***, the '316 Patent relies on manual steps by an administrator or some undefined, generic software project for performing those same steps automatically. '316 Patent at 12:24-32, 10:44-46. The only disclosure on how to annotate the video with ***"first interactive video layer including selectable video objects" linked to product information*** and ***a "second interactive video layer having active sessions or conversations between users"*** is to implement the same using "[a]ny of a plurality of different programming language," such as "HTML 5, JavaScript, Angular 2.0, Cascading Style Sheets, C#, REST services, SQL, and any combination of these or other languages." '316 Patent at 11:67-12:5, 13:46-52. And the specification's only guidance for ***distributing the resultant video and accompanying product and social media information*** as layers in "video data" is to use a commonly available ".vtt file" and "a series of JavaScript and jQuery functions." *Id.* at 23:42-58. Such use of off-the-shelf components cannot qualify as an inventive concept. *See Elec. Power Grp.*, 830 F.3d at 1355 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.").

The ordered combination does not rescue the claims either. The claims and specification reveal no technical improvement over the prior art from the specific combination of claim steps. Indeed, the only benefit identified—appearing only in the specification and not the claims—is generating "additional merchandising revenue" from annotating the video with product information and "increasing advertising revenues" from annotating the video with social media information. '316 Patent at 4:8-19. Neither of those is any "technical improvement over prior art ways" of distributing or annotating videos. *Cf. Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

This Court's reasoning in *ART* is again dispositive. ART argued that the "specific ordered combination of elements" in its claims created a "particular practical application" of the abstract idea. *ART*, 2025 WL 2772608, at *7 (citing *Bascom*, 827 F.3d at 1352). This Court rejected that contention, holding that "the district court need not accept a patent owner's conclusory allegations of inventiveness" and that ART had "failed to advance any nonconclusory allegations of inventiveness." *Id.* at *7 (quoting *IBM*, 50 F.4th at 1379). ShopSee is in no better position.

Finally, the dependent claims again do not change the analysis. Claims 2 through 5 add turning layers on and off, displaying marketing information upon selection, and enabling in-video purchasing—routine interface and e-commerce features. Claims 6 and 7 add clip lists and collection of user activity data, both conventional media-platform functions. Claim 8 substitutes different product information for existing product information, an ordinary content-management step. Claims 9 through 11 add a third interactive layer and links to bonus content, simply extending the same abstract layering concept. Claim 12 limits the content to television episodes or movies, a field-of-use restriction. Claim 13 confirms manual identification; Claim 14 invokes automatic recognition and mapping without saying how. Claim 15 claims the desired result of being unaffected by ad-blocking software without reciting any technical mechanism for achieving it. Claims 16 and 19 add public and private conversation, an ordinary feature of social-media systems. None of these dependent claims supply an inventive concept.

## V. CONCLUSION

For the foregoing reasons, TikTok respectfully requests that the Court enter judgment on the pleadings that all Asserted Claims of the ’316 Patent are invalid as patent-ineligible under 35 U.S.C. § 101.

DATED: April 13, 2026

Respectfully submitted,

/s/ Ognjen Zivojnovic
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Ognjen Zivojnovic (Bar No. 307801)
ogizivojnovic@quinnemanuel.com
Haihang Wang (Bar No. 339727)
haihangwang@quinnemanuel.com
Jeremy Thomas (Bar No. 357522)
jeremythomas@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Mark Tung (Bar No. 245782)
marktung@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Counsel for Defendant TikTok Inc.*