Brett M. Sandford (SBN 302072)
Allison Harms (SBN 299214)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
brett.sandford@lw.com
allison.harms@lw.com

Matthew J. Moore (*pro hac vice*)
Gabriel K. Bell (*pro hac vice*)
Tiffany C. Weston (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
matthew.moore@lw.com
gabriel.bell@lw.com
tiffany.weston@lw.com

Kimberly Q. Li (*pro hac vice*)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facisimile: (617) 948-6001
kimberly.li@lw.com

*Counsel for Plaintiff ShopSee, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SHOPSEE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK INC.,<br><br>Defendant. | Case No. 3:26-cv-00703-AMO<br><br>**SHOPSEE, INC.'S OPPOSITION TO TIKTOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER 35 U.S.C. § 101**<br><br>Hearing Date: July 2, 2026<br>Time: 2:00 p.m.<br>Place: Courtroom 10<br>Judge: Hon. Araceli Martínez-Olguín |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
  A. The Technological Problem Existing In 2016 ..... 2
  B. ShopSee's Patented Solution ..... 2
  C. The Present Lawsuit ..... 3
III. LEGAL STANDARDS ..... 4
  A. Motions For Judgment On The Pleadings Under Rule 12(c) ..... 4
  B. Patent-Eligibility Under 35 U.S.C. § 101 ..... 4
IV. ARGUMENT ..... 5
  A. The '316 Patent Claims Are Patent-Eligible Under 35 U.S.C. § 101 ..... 6
  B. At Minimum, Factual Questions Preclude Granting TikTok's Motion ..... 19
  C. Any Grant Should Be With Leave To Amend ..... 22
V. CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*10Tales, Inc. v. TikTok Inc.*,
No. 2024-1792, 2026 WL 879632 (Fed. Cir. Mar. 31, 2026) .....12

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ..... *passim*

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014) .....1, 4, 14

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016) .....16

*Ancora Techs., Inc. v. HTC Am., Inc.*,
908 F.3d 1343 (Fed. Cir. 2018) .....7

*ART Rsch. & Tech. LLC v. Google LLC*,
2025 WL 2772608 (N.D. Cal. Sep. 29, 2025) ..... *passim*

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) .....16, 17, 18

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) .....4, 5, 19, 20

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
113 F.4th 1359 (Fed. Cir. 2024) .....10, 11, 12

*Broadcom Corp. v. Netflix Inc.*,
677 F. Supp. 3d 1010 (N.D. Cal. 2023) .....22

*BSD Crown, Ltd. V. Amazon.com, Inc.*,
No. 3:23-cv-00057-WHO, 2024 WL 332887 (N.D. Cal. Jan. 29, 2024) .....18

*CardioNet, LLC v. InfoBionic, Inc*,
955 F.3d 1358 (Fed. Cir. 2020) .....19

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) .....4, 5, 14, 21

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012) .....4

*Contour IP Holding LLC v. GoPro, Inc.*,
113 F.4th 1373 (Fed. Cir. 2024) .....8

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022) ....................20

*Core Wireless Licensing S.A.R.L. v. LG Elecs.*,
880 F.3d 1356 (Fed. Cir. 2018).................... *passim*

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*,
15 F.4th 1091 (Fed. Cir. 2021) ....................5, 14, 16, 18

*Data Engine Techs. LLC. v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018)....................6, 8, 10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014).................... *passim*

*directPacket Rsch., Inc. v. Polycom Inc.*,
No. 3:19-cv-03918-JD, 2023 WL 6301066 (N.D. Cal. Sept. 26, 2023) ....................22

*Droplets, Inc. v. Yahoo! Inc.*,
No. 12-cv-03733-JST, 2022 WL 20016849 (N.D. Cal. Aug. 25, 2022)....................8

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016).................... *passim*

*ESW Holdings v. Roku*,
No. 6:19-cv-00044, 2019 WL 10303653 (W.D. Tex. May 13, 2019) ....................9

*Fortinet, Inc. v. Forescout Techs., Inc.*,
730 F.Supp.3d 958 (N.D. Cal. Apr. 16, 2024) ....................21

*Gregg v. Hawaii*,
870 F.3d 883 (9th Cir. 2017) ....................4

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ....................10, 11

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018)....................12

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
566 U.S. 66 (2012)....................14

*Mentone Sols. LLC v. Digi Int'l Inc.*,
No. 2021-1202, 2021 WL 5291802 (Fed. Cir. Nov. 15, 2021) ....................18

*Nokia Techs. Oy v. Warner Bros. Entm't Inc.*,
No. 25-cv-01337, 2026 WL 622650 (D. Del. Mar. 5, 2026) ....................14, 15

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ....................13

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020)..........5, 9

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2014)..........22

*TikTok, Inc. v. ShopSee, Inc.*,
IPR2025-01485, Paper 13 (PTAB Jan. 16, 2026)..........22

*Turner v. Cook*,
362 F.3d 1219 (9th Cir. 2004)..........4

*U.S. Pat. No. 7,679,637 LLC v. Google LLC*,
164 F.4th 1373 (Fed. Cir. 2026)..........6

**STATUTES**

35 U.S.C. § 101..........*passim*

**RULES**

Fed. R. Civ. P.
12..........4, 20
12(b)(6)..........4
12(c)..........*passim*

# I. INTRODUCTION

The claims of Plaintiff ShopSee Inc.'s ("ShopSee") U.S. Patent No. 11,134,316 ("the '316 patent") are eligible under 35 U.S.C. § 101 and *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), because they are directed to a significant improvement in online streaming technology—generating interactive video layers over video media, which allows users to interact with additional content without being transported to a different environment. The claims are eligible at both steps of the *Alice* framework because they (1) are directed to a technological advance, not a mere abstract idea (at step one) and (2) at minimum plausibly add unconventional technology (at step two).

The '316 patent claims are just as eligible as the claims that the Federal Circuit upheld in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) ("*DDR*"). There, the claimed solution was eligible because it overcame a "problem specifically arising in the realm of computer networks" (the loss of website visitor traffic when a user clicked a hyperlink and was instantly transported to a third-party website) with a specific technological solution (allowing users to shop for goods without leaving a given environment). As the Federal Circuit held at *Alice* step two, those claims addressed the challenge of retaining control over the customer in the context of the Internet. The '316 patent addresses a similar problem with an even more inventive solution: rather than transporting the user away from the video stream to interact with products or other users, the invention keeps the user within the video environment by incorporating interactive layers directly onto the stream. *DDR* is therefore dispositive. Even if this Court reaches *Alice* step two (which it need not), *DDR* confirms that the '316 patent claims are directed to a technical solution necessarily rooted in computer technology. But *DDR* is not alone. Other Federal Circuit decisions—at both steps of the *Alice* test—likewise demonstrate that the claims here are patent-eligible or that, at minimum, there are factual issues that cannot be resolved against ShopSee at this stage.

TikTok incorrectly reduces the inventive concept of the '316 patent to "annotating video with product and social media information." Dkt. 128 at 1. To arrive at this mischaracterization, TikTok strips the claims of their specific technical limitations, ignores the technological problems the patent solves, and conflates the patent's commercial benefits with its claimed technological

advance. When the claims and specification are properly read, with all material allegations accepted as true and construed in the light most favorable to ShopSee—as they must be on a Rule 12(c) motion—and taken in context of the state of the art as it existed as of the time of the invention, TikTok's motion fails at both steps of the *Alice* framework. Accordingly, this Court should deny TikTok's motion or, alternatively, grant ShopSee leave to amend the operative complaint.

## II. BACKGROUND

### A. The Technological Problem Existing In 2016

The '316 patent inventors addressed a persistent and significant problem with online streaming technology. Before the '316 patent, online streaming technology did not allow for user interactivity with additional content without taking the user out of the video media environment. Dkt. 1-1 (hereafter "'316 patent") at 2:13-18, 2:37-39, 3:29-32. With online streaming services "gaining in popularity," there was "a dramatic shift in consumer behavior regarding online entertainment." *Id.* at 1:30-32, 1:67-2:2, 2:22-25. In turn, there was a need to allow users to interact with additional content (e.g., advertisements or character information) without "unwanted interruptions." *Id.* at 1:19-26, 1:32-34. Existing technology had significant drawbacks as such interactions transported users to a different environment entirely (e.g., when a user clicks on a link or is subjected to a pop-up advertisement), or resulted in an equivalent removal from the streaming video environment (e.g., requiring the user to scroll or direct attention away from the video). *Id.* at 2:37-39. And the alternative was to forego the interaction with additional content entirely, by not clicking the link or by using ad blockers. *Id.* at 1:30-37. Neither option allowed users to interact with the additional content while staying in the same streaming video environment.

### B. ShopSee's Patented Solution

The '316 patent inventors solved that problem, with a technological solution that provides "seamless entertainment" to the user by "generating several interactive video layers." '316 patent at 2:8-10, 2:22-32; *see also* Dkt. 28 (TikTok's First Amended Complaint ("FAC")) ¶¶ 24-26. Specifically, a first interactive video layer allows the user to view items of interest "that have been integrated into the entertainment while the user views the layer" and underlying video media. '316 patent at 2:32-37. And, a second interactive video layer allows users to communicate with other

users "while watching a television show or movie," without having to leave the video media and "[a]s users view the online streaming entertainment." *Id.* at 2:39-44. These interactive video layers allow the user to remain in the streaming video environment without "permanent interruption such as windows or prompts." *Id.* at 2:37-39. This solution "eliminat[es] the need for a second screen" because the user "is not directed to another website" and "never leaves the video media." *Id.* at 3:26-42. As a result, the interactive video layers improve immersivity and user engagement with video media, and in particular in the context of online streaming technology.

The technological solution is captured in the recited claim steps associated with generating the first interactive video layer, including the related processing step. *Id.* at cl. 1. The claimed processing step further includes identifying visual and audio objects that serve as items of interest, associating information with those items of interest, tracking those items of interests through the frames of the video media, and assigning visual indicators that allow those items of interests to be selected and displayed. *Id.* The tracking step, which "follows the items of interest throughout all of the frames of the video media that the item of interest is in," is a key part of the technological solution because it aligns the items of interest and associated information shown in the first interactive video layer with the underlying video media—allowing both to be shown at the same time rather than in separate windows. *Id.* at 3:20-24. Similarly, generating the second interactive video layer, which is used to display "an interaction between the user and [] at least one guest" "as an overlay to the video media," reflects the technological solution. *Id.* at cl. 1. The ability for the user to "maintain[] and toggl[e] between a plurality of different conversations" likewise goes to the heart of the technological solution to the technological problems. *Id*. Both the first interactive video layer (allowing users to obtain information about and purchase items of interest) and the second interactive video layer (allowing users to interact) allow users to stay within the video media rather than being directed away or needing to shift attention away to a second screen. *Id*. at 2:8-21, 2:32-50, 3:38-46; *see also* Dkt. 28 ¶¶ 25, 27.

### C. The Present Lawsuit

On December 17, 2024, after recognizing that TikTok was using ShopSee's patented technology without a license, ShopSee sued TikTok in the Western District of Texas for infringing

the ’316 patent. Dkt. 1. On March 10, 2025, ShopSee filed its FAC. Dkt. 28. On February 27, 2025, TikTok filed a motion to transfer the case to this District. Dkt. 25. On September 2, 2025, TikTok filed a petition for *inter partes* review (“IPR”) of the ’316 patent. On January 16, 2026, the Patent Trial and Appeal Board declined to institute TikTok’s petition. The next day, the district court judge transferred the case to this District. Dkt. 114. TikTok then filed the instant motion on April 13, 2026. Dkt. 128.

## III. LEGAL STANDARDS

### A. Motions For Judgment On The Pleadings Under Rule 12(c)

On a Rule 12(c) motion, the Court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party (here, ShopSee). *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). The Rule 12(c) analysis is “substantially identical to [the] analysis under Rule 12(b)(6).” *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *Gregg v. Hawaii*, 870 F.3d 883, 887 (9th Cir. 2017).[1] Thus, patent eligibility cannot be decided on a Rule 12 motion unless “there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.” *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (reversing grant of Rule 12 motion).

### B. Patent-Eligibility Under 35 U.S.C. § 101

Patents are presumed eligible under § 101, and TikTok has the burden to prove otherwise by clear and convincing evidence. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (“*Cellspin*”); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). The two-step framework of *Alice* governs eligibility. *See Alice*, 573 U.S. at 217-18.

At *Alice* step one, TikTok must show the asserted claims are directed to an abstract idea. *Id.* at 218. Claims are not abstract at step one if they are “directed to a specific improvement” or “to a specific implementation of a solution to a problem.” *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338, 1339 (Fed. Cir. 2016). This inquiry often turns on “whether the claims are directed to a specific asserted improvement” in computer capabilities or whether “computers are invoked merely as a tool.” *Core Wireless Licensing S.A.R.L. v. LG Elecs.*, 880 F.3d 1356, 1361-

[1] All internal citations and quotation marks omitted, unless otherwise noted.

62 (Fed. Cir. 2018) (quoting *Enfish*, 822 F.3d at 1336). Importantly, the Federal Circuit has warned against "overgeneralizing claims in the § 101 analysis" because "characterizing the claims at a high level of abstraction that is untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *TecSec, Inc. v. Adobe Inc*., 978 F.3d 1278, 1293 (Fed. Cir. 2020) (quoting *Enfish*, 822 F.3d at 1337). If TikTok fails to show the claims are abstract at step one, the inquiry ends and its Rule 12(c) motion fails; otherwise, the Court proceeds to step two.

At *Alice* step two, the claims are nonetheless eligible if the recited elements, individually or in ordered combination, add something inventive—i.e., something more than "well-understood, routine, and conventional activities previously known to the industry." *Cellspin*, 927 F.3d at 1316 (quoting *Aatrix*, 882 F.3d at 1128). "Any fact, such as whether a claim element or combination is well-understood or routine, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Id.* at 1319 (quoting *Berkheimer*, 881 F.3d at 1368). At this stage, if ShopSee plausibly alleges that the claim elements, individually or in combination, add something that is not well-understood, routine, and conventional, eligibility cannot be resolved on the pleadings and TikTok's Rule 12(c) motion must be denied. *See*, *e.g.*, *Aatrix*, 882 F.3d at 1129-30.

## IV. ARGUMENT

TikTok fails to carry its heavy burden to show patent ineligibility by clear and convincing evidence. At both steps, TikTok ignores the most pertinent descriptions of the invention in the specification and claim language, and improperly cherry-picks statements that focus solely the downstream economic benefits of the invention. Properly considering the claims in view of the specification reveals that ShopSee's patented invention reflects a significant technological improvement to the user interface for displaying online video media—the exact type of technological invention that the Federal Circuit has found eligible under § 101. *See Enfish*, 822 F.3d at 1335 (finding claims eligible at step one, considered "in light of the specification"); *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1099 (Fed. Cir. 2021) (finding claims eligible at step two where the "specification describes how the particular arrangement of steps … provides a technical improvement over conventional authentication methods").

### A. The ’316 Patent Claims Are Patent-Eligible Under 35 U.S.C. § 101

#### 1. *Alice* Step One: The Claims Are Directed To A Specific Improvement In Streaming Technology, Not An Abstract Idea

At *Alice* step one, the inquiry often turns on “whether the claims are directed to a specific improvement in the capabilities of computing devices, or, instead, a process that qualifies as an ‘abstract idea’ for which computers are invoked merely as a tool.” *Core Wireless*, 880 F.3d at 1361-62 (quoting *Enfish*, 822 F.3d at 1336). The ’316 patent claims are directed to a specific improvement in streaming technology that enhances computer video interface capabilities, not to an abstract idea. TikTok’s motion fails for this reason alone. *See id.*

Claim 1, for example, is directed to providing interactive video layers within video media that enable user interaction with additional content without transporting the user to another environment. ’316 patent at cl. 1. The patented invention includes: (1) a “first interactive video layer” displaying selectable visual indicators related to items, services, or songs of interest through processing and tracking visual and audio objects related to the video media; and (2) a “second interactive video layer” with a social media portion where a user can maintain and toggle between different conversations—all as an overlay to the playing video media. *Id.* Together, the invention permits “seamless entertainment” where the user need not “leave[] the video media,” offering an improved user interface and an advance in streaming technology. *Id.* at 2:8-10, 3:33-37.

The specification confirms the invention is directed to a specific technological problem, not an abstract idea. *See Data Engine Techs. LLC. v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018) (“*Data Engine*”) (explaining that claims must be “read as a whole, in light of the specification” to determine whether they are directed to an abstract idea); *U.S. Pat. No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1378 (Fed. Cir. 2026) (“While the § 101 inquiry must focus on the language of the asserted claims themselves, the claim itself need not explicitly recite the improvement.”). The claimed combination of these interactive video layers provides a solution that eliminates interruptions to the user that were otherwise common (but problematic) for online or streaming video media, and increases user engagement with the video media. For instance, when providing additional ability for users to interact with items of interest, the invention avoids

removing users from the streaming video environment, such as to another website, and "without permanent interruption" to the user watching the video media. '316 patent at 2:37-39, 3:29-35. The invention also "eliminat[es] the need for a second screen" and improves upon "other [existing] technology," such as separate "windows or prompts" that may equally district or interrupt the user. *Id.* at 2:37-39, 3:38-43. And, the interactive video layers—because they are displayed over the video media and are not treated as separate interruptions to the video—are "immune to ad blocking," ensuring that users do not lose the benefit for additional user interactions while remaining undisruptive. *Id.* at 2:13-18, 3:15-17. Thus, the invention claimed in the '316 patent is "a specific technique *that departs from earlier approaches* to solve a specific [technological] problem," which makes it non-abstract at *Alice* step one. *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (emphasis added).

The claims are similar to ones the Federal Circuit has held patent-eligible at *Alice* step one. For instance, in *Core Wireless*, the Federal Circuit held that claims directed to an improved user interface for computing devices—specifically "a particular manner of summarizing and presenting information in electronic devices"—were not directed to an abstract idea. 880 F.3d at 1362. The claim language recited:

> 1. A computing device comprising a display screen, the computing device being configured to display on the screen a menu listing one or more applications, and additionally being configured to display on the screen an application summary that can be reached directly from the menu, wherein the application summary displays a limited list of data offered within the one or more applications, each of the data in the list being selectable to launch the respective application and enable the selected data to be seen within the respective application, and wherein the application summary is displayed while the one or more applications are in an un-launched state.

*Id.* at 1359. The Federal Circuit recognized that the claims, though brief, required a specific access method (an application summary reachable directly from the menu), constrained data display (a limited set of selectable data items, each of which launched a respective application), and specific application state (displayed while applications remain in an un-launched state). *Id.* Thus, the court held the claims "disclose a specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods to display a generic index on a computer."

*Id.* at 1363. Similarly, in *Data Engine*, the Federal Circuit held that claims for an improved user interface for 3D spreadsheets were directed to a technological advance, not an abstract idea, at *Alice* step one. 906 F.3d at 1007-11. As the court explained, those claims were "directed to a specific improved method for navigating through complex three-dimensional electronic spreadsheets." *Id.* at 1002.

The claimed invention here provides a similar, but even more detailed, improved interface because it recites selectable visual indicators linked to items of interest, which are presented in structured layers over video media. *See supra* at 2-3. As in *Core Wireless*, the '316 patent enables functionality—shopping, browsing product information, engaging in social media conversations—without "launching" a separate application, window, or browser tab, and without navigating the user away from the video. *See* 880 F.3d at 1359. And as in *Data Engine*, the '316 patent provides "a specific solution to then-existing technological problems" in navigating through complex environments (there, spreadsheets; here, media streams). 906 F.3d at 1008. Therefore, as in *Core Wireless* and *Data Engine*, the claims here provide a technological advance, not an abstract idea, because the computing devices allow for user interaction and improved functionality in streaming that was previously impossible. *See also, e.g.*, *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1380 (Fed. Cir. 2024) (claims providing multiple data streams simultaneously allowed device to "operate differently than it otherwise could").

Courts in this District have applied this law under similar facts to reach the same result. For instance, the court in *Droplets, Inc. v. Yahoo! Inc.* found claims directed to the "storage and provision of an interactive link capable of restoring a user's particular application operating state" were "non-abstract." No. 12-cv-03733-JST, 2022 WL 20016849, at *1, *3 (N.D. Cal. Aug. 25, 2022). In particular, the claimed invention provided "a specific, non-abstract improvement to computer technology (i.e., providing and storing information to be re-presented to website visitors through an interactive link capable of restoring a user's operating state)," unlike conventional web bookmarks. *Id.* at *3, *5 (explaining that the invention overcame "an Internet-specific problem" of "retaining information entered by website visitors who re-navigate to that website"). Like the *Droplets* patent, the '316 patent is directed to a technological improvement related to a problem

specific to online streaming—the invention maintains the user's state with respect to the video media through a particular user interface, "without permanent interruption such as windows or prompts" or "the need for a second screen," while allowing the user to explore items of interest and engage with other users. '316 patent at 2:37-39, 3:38-43.

*ESW Holdings v. Roku* is also instructive. No. 6:19-cv-00044, 2019 WL 10303653 (W.D. Tex. May 13, 2019). There, the court addressed claims for providing for a developer environment and a user interface for "creating different templates" for "interactive television applications." *Id.* at *4. The court determined that the claims were not directed to an abstract idea because they "improve[] the manner in which a user can create an iTV application," which provides "a specific, practical, and useful improvement to the processes that existed at the time of the invention." *Id.* The claimed invention allowed the user to "access, change, and save" templates, which was a unique solution that focused on enabling user interaction for creating iTV applications. *Id.* at *3. The same is true for the '316 patent, which improves the user interface specific to online streaming by eliminating interruptions to the user experience. *See* '316 patent at 2:8-50; *see also supra* at 2-3. The interactive video layers of the invention provide a solution that enable user interaction without removing the user from the streaming video environment.

Against this factual and legal backdrop, TikTok contends that the claims merely recite functional steps that "address commercial problems and achieve commercial goals." Dkt. 128 at 7. TikTok then focuses its analysis on these alleged commercial goals with respect to its reductive reframing of claim 1 of the '316 patent. *Id.* at 8-9. TikTok's approach and argument fail on both the facts and the law.

<u>First</u>, TikTok misrepresents the claimed invention and, in doing so, commits legal error. The Federal Circuit has repeatedly held that claims should not be "overgeneraliz[ed]" through an analysis "untethered" from the claim language. *TecSec*, 978 F.3d at 1292 (quoting *Enfish,* 822 F.3d at 1337). But that is precisely what TikTok does here by erroneously recasting the claims as nothing more than the abstract idea of "annotating [] video with product and social media information." Dkt. 128 at 7. The claims do not mention "annotation." Instead, the purpose of the invention, as reflected in the claim language, is to use "interactive video layers … that integrate[]

within the entertainment without interruption of the entertainment and is immune to ad blocking." '316 patent at 2:13-18.

TikTok's inaccurate framing also ignores key claim limitations. TikTok's summary of the claims as five generic steps improperly strips claim 1 of its technical content, including the specific processing steps required to generate the first interactive video layer (identifying, associating, tracking, and assigning selectable visual indicators). The specific structure and function of the second interactive video layer (a social media portion controllable by the user, with the capability of maintaining and toggling between a plurality of different conversations as an overlay to the video media); and the display of the "interactive video media layer[s] as an overlay to the video media" to the user. *Compare id.* at cl. 1, *with* Dkt. 128 at 8.

Second, TikTok dissects each limitation of claim 1 to argue that each component—in isolation—is abstract. Dkt. 128 at 9-14. This approach contradicts established law. The question is not whether any individual limitation, viewed in isolation, appears abstract or conventional; it is whether the "claim[s], considered in light of the specification," and "as a whole" are directed to an abstract idea or to a specific technological improvement. *Enfish*, 822 F.3d at 1335. While TikTok pays lip service to this established law by asserting that "[w]hether viewed individually or in combination, these are abstract ideas" (Dkt. 128 at 14), TikTok never explains why that is true or undertakes this analysis to support this conclusory (and incorrect) assertion. That is because, when claim 1 is viewed as a whole—as the law requires—it is *not* directed to the abstract idea of merely "annotating video" any more than the eligible *Core Wireless* claims were directed to the abstract idea of "an index," or the eligible *Data Engine* claims were directed to the abstract idea of collecting, recognizing, and storing spreadsheet data. *See Core Wireless*, 880 F.3d at 1362-63; *Data Engine*, 906 F.3d at 1008-09.

Third, the cases TikTok cites are readily distinguishable. TikTok principally relies on this Court's decision in *ART Rsch. & Tech. LLC v. Google LLC*, 2025 WL 2772608 (N.D. Cal. Sep. 29, 2025), as well as the Federal Circuit's decisions in *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371 (Fed. Cir. 2022) ("*IBM*"), and *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359 (Fed. Cir. 2024) ("*Broadband*"). None of these cases are instructive here.

In *ART*, the patents-in-suit were expressly directed to annotating video excerpts. *See* 2025 WL 2772608, at *1-3 (addressing claims from patents for "Video Annotation" and "Annotating" video clips). This Court found the claims abstract because humans have long "annotated by hand" and made "composite clips," and the alleged technological improvements were not recited in the claims. *Id.* at *6. Similarly, in *IBM*, the claims focused on displaying additional useful information layered on a map—something humans have long done. *IBM*, 50 F.4th at 1380. Here, in contrast, the claims do not merely "annotate" or "display" information—they require specific technological improvements to enable improved user interactivity and immersivity for online video streaming. *See supra* at 2-3. For example, the claims recite using selectable visual indicators on the first interactive video layer to provide information regarding items of interest to the user. '316 patent at cl. 1, 3:26-37. These visual indicators are generated from the video media, which involving tracking the items of interest through the video media itself. *Id.* at cl. 1, 3:20-22. As another example, the claims recite allowing the user to maintain and toggle between multiple conversations on the second interactive video layer—all while the user remains in the streaming video environment. *Id.* at cl. 1, 3:38-49. These specific technical features in the '316 patent claims achieve the technological improvement of keeping the user within the streaming video environment while minimizing interruptions and enhancing user engagement. Thus, the claims are unlike those in *ART* and *IBM*, and more like ones upheld in *Core Wireless* and *Data Engine*.

*Broadband* is similarly distinguishable. There, the claimed invention, as described in the specification, was directed to "automating the creation of a hierarchically arranged, template-based program guide," which was populated by metadata in a static form. 113 F.4th at 1363. The Federal Circuit found those claims ineligible because they were "directed to receiving metadata and organizing the display of video content based on that metadata." *Id.* at 1367-68. In contrast, the '316 patent claims extend well beyond merely organizing and displaying information. The claims provide improved computer functionality and user interactivity: they recite generating interactive video layers, which involve processing the video media itself through multiple technical steps, and dynamically displaying selectable visual indicators associated with items of interest as the video media. Further, as the '316 patent explains, these interactive video layers are "*not meant to*

*encompass* traditional television guide layers, channel navigation layers, TV show or movie information layers, or closed captioning layers," which are more similar to the template-based program guide found patent-ineligible in *Broadband*. '316 patent at 14:13-17 (emphasis added). And, especially when the first interactive video layer is combined with the second interactive video layer's social media interactions and toggling functionality, the claims are more akin to the patent-eligible claims in *Core Wireless*, which the *Broadband* court itself acknowledged reflected "an improved structure or function." *Broadband*, 113 F.4th at 1368.[2]

<u>Fourth</u>, TikTok ignores the technical benefits of the invention and, instead, narrowly treats certain downstream benefits or advantages of the patented invention as the focus of the invention itself. Specifically, TikTok repeatedly emphasizes the '316 patent's references to "revenue" and "consumer behavior" (*e.g.*, Dkt. 128 at 1-2, 7) as the exclusive focus of the invention. That is incorrect—while these are commercial benefits that flow from the technological improvement, they are not the claimed advance itself. As the Federal Circuit has explained, that a technological invention produces commercial advantages does not render the underlying technology abstract.

In *DDR*, for example, the Federal Circuit held claims eligible despite the specification discussing the same sort of downstream commercial benefits—including advertising—that TikTok focuses on here. 773 F.3d at 1257-58. The *DDR* patent stated: "Not only does the present invention provide its Hosts with the *added value and incremental revenues* of traditional affiliate programs, but the company also enables Hosts to *control the customer experience before, during, and after the purchase transaction*." Ex. 1 (U.S. Patent No. 7,818,399) at 2:59-67 (emphasis added) (further discussing benefits such as "increased marketing potential, incremental sales, and new customer relationships" and "hard-won visitor traffic"); *see also id.* at cl. 19 (preamble reciting "[a] system useful in an outsource provider serving web pages offering commercial

---

[2] TikTok's other cited cases (Dkt. 128 at 2-3, 11-13) are inapt for the same reasons: they address claims directed at merely displaying information rather than improvements in functionality and user interface interaction. *See, e.g.*, *10Tales, Inc. v. TikTok Inc.*, No. 2024-1792, 2026 WL 879632, at *3 (Fed. Cir. Mar. 31, 2026) (finding claim is drawn to "presenting personalized content to a user based on information about the user"); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018) ("display of two sets of information on a generic display device is abstract absent a specific improvement to the way computers [or other technologies] operate") (quoting *Enfish*, 822 F.3d at 1336).

opportunities"). Nonetheless, the Federal Circuit held that the claims do *not* merely "recite a fundamental economic or longstanding commercial practice" and, instead, address an Internet-specific problem (users being transported to a different Internet location and the need to "retain[] control over the [user's] attention") with a technological solution (an integrated, uniform environment for the user to purchase goods—a uniquely digital store-within-a-store with no human analogy). *DDR*, 773 F.3d at 1257-58.[3] The same is true here. The '316 patent claims are not merely directed to commercial benefits, as TikTok claims. Instead, they address a specific technological problem (users being transported to a different environment and the need to maintain the user's attention) with a specific technological solution (allowing users to interact with additional content, such as advertising, with integrated interactive video layers within the same environment—e.g., a uniquely digital store-within-a-stream with no human analogy). '316 patent at cl. 1; *see also supra* at 2-3.

<u>Fifth</u>, TikTok fundamentally mischaracterizes the patented invention by analogizing to human processes such as magazine advertisements and paper lookbooks. Dkt. 128 at 10, n.1. The '316 patented invention is not directed to the abstract concept of associating products with entertainment content or merely annotating videos. Neither "associating" nor "annotating" appear in the claims. Instead, the invention is directed to a specific technological solution for enabling interactive engagement while online streaming without interruption—something that cannot be "performed in the human mind or with pencil and paper." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021). *DDR* is again instructive. There, the Federal Circuit held that the claims were not akin to a human concept (a brick-and-mortar "store within a store") because they addressed a problem (users being instantly transported to a different location) that did not occur in the real world. 773 F.3d at 1258. The claims here address the same problem in the context of online streaming. Specifically, the invention eliminates the need to transport the user to another website (i.e., a different location) and the need for a second screen for user interaction while the video media is playing. *See, e.g.*, '316 patent at 3:29-49. Put differently, the

---

[3] *DDR* was ultimately decided at step two and is discussed further below. *Infra* at 15-16.

invention solves specific technological challenges unique to online streaming that were not even problems applicable to printed publications.

The ’316 patent claims are directed to a technological improvement, not an abstract idea, and are therefore eligible at *Alice* step one. Because TikTok’s argument fails at *Alice* step one, its motion can be denied on that basis alone. The Court need not reach step two.

### 2. *Alice* Step Two: The Claims Add An Inventive Concept

Even if the claims were directed to TikTok’s abstract “annotation” idea (they are not), TikTok’s motion still fails because the claimed interactive video layers of the ’316 patent reflect an unconventional technological improvement that was not routine to a skilled artisan in the relevant field at the time of the invention. At *Alice* step two, the Court “consider[s] the elements of each claim both individually and ‘as an ordered combination’ to determine whether the additional elements ‘transform the nature of the claim’ into a patent-eligible application.” *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Lab’ys, Inc.*, 566 U.S. 66, 78-79 (2012)). At this stage, ShopSee need only make “plausible and specific factual allegations that aspects of the claims are inventive” to defeat TikTok’s motion. *Cellspin*, 927 F.3d at 1317. In contrast, TikTok bears the heavy burden of proving conventionality by clear and convincing evidence. *Id.* at 1319. As explained below, ShopSee has more than plausibly alleged that the claims recite unconventional, inventive technology apart from any abstract idea, whereas TikTok presents no evidence—let alone clear and convincing evidence—to demonstrate conventionality.

Each of the first and second interactive video layers gives rise to specific technological improvements that go well beyond what was conventional and well-understood at the time of the invention. Here, the computer is “perform[ing] more than well-understood, routine, conventional activities previously known to the industry.” *CosmoKey*, 15 F.4th at 1097; *see, e.g.*, *Nokia Techs. Oy v. Warner Bros. Entm’t Inc.*, No. 25-cv-01337, 2026 WL 622650, at *9 (D. Del. Mar. 5, 2026) (finding claims patent-eligible at step two because they “carve out a specific method of sequencing image frames that allow the user to start browsing a video sequence from a random point, which was unknown in the prior art at the time [of filing]”). When the ’316 patent was filed in 2016, conventional techniques involved static template displays, interruptive pre-roll advertisements, or

redirecting users away from video content—none of which provided the dynamic, immersive, and interactive experience available by practicing the '316 patent claims. *E.g.*, '316 patent at 2:37-39.

The claimed first interactive video layer "create[s] a unique model" "within the long-form entertainment," enabling a user to purchase items of interest without ever leaving the video media. *Id*. at 2:22-27, 3:33-37. The processing and tracking of items of interest within the context of video media is not something that can be characterized as merely automating a human action given the complexity of performing those steps in the context of dynamically changing video frames, as the interactive video layers are "displayable … as an overlay to the video media." *Id.* at cl. 1. The second interactive video layer enables users to "interact[] with the content and sharing it with friends or other users either in the interactive layer or on their own outside social media feeds," also without leaving the video media. *Id.* at 3:26-67, 4:8-16. The ability to maintain and toggle between interactions with different users—all without interrupting the video media—is a unique technological feature that significantly improves upon the conventional way users engaged with digital video media.

The Federal Circuit's decision in *DDR* is squarely on point. There, the court found certain claims eligible at step two because they addressed a very similar technological problem with an equally inventive technological solution. The *DDR* claims "address[ed] the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after clicking on an advertisement and activating a hyperlink." 773 F.3d at 1257. The *DDR* claims also provided a technological solution, "overrid[ing] the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *Id.* The court explained: "Instead of the computer network operating in its normal, expected manner by sending the website visitor to the third-party website that appears to be connected with the clicked advertisement, the claimed system generates and directs the visitor to the above-described hybrid web page that presents product information from the third-party and visual look and feel elements from the host website." *Id.* at 1258-59.

The same result follows here. The '316 patent claims address the technological problem of allowing users who are streaming video to interact with additional content without being

instantly transported to a different site (e.g., a pop-up ad or website). '316 patent at 2:8-18. A comparison of the key figures and respective abstracts of the *DDR* patent and the '316 patent reveals similarities showing that both patents address similar technological problems. Ex. 2. Indeed, much like the *DDR* patent, the '316 patent explains that the invention "allows users to control their [] experience without permanent interruption such as windows or prompts that other technology uses" and "the user is not directed to another web site." '316 patent at 2:37-39, 3:29-33. As the Federal Circuit held in *DDR*, this is a technology-specific challenge that does not occur in the "brick-and-mortar context." 773 F.3d at 1258. And, as in *DDR*, the '316 patent claims provide a technological solution—specifically, "overrid[ing] the routine and conventional sequence of events ordinarily triggered" when a user clicks a link to interact with additional content. *Id.* at 1258-59. As discussed, the '316 patent claims here recite generating interactive video layers that allow the user to shop for items and engage in social media conversations without ever leaving the video media. Therefore, just as in *DDR*, the claims add an inventive concept and are eligible here, too.

Other Federal Circuit decisions confirm this conclusion. For example, in *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, the Federal Circuit found that the claimed "distributed enhancement" "entails an unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)." 841 F.3d 1288, 1300 (Fed. Cir. 2016). Notably, the Federal Circuit reversed the district court's finding of ineligibility under step two notwithstanding that the claim limitations "requires arguably generic components," including "arguably generic gatherers, network devices, and other components." *Id.* at 1301 (relying on the specification's comparison of the problem and prior art). In *CosmoKey*, the Federal Circuit found that the claims "recite[d] a specific improvement to authentication that increases security," consistent with the specification that "emphasize[d] the inventive nature" of the authentication function over prior art multifactor authentication systems. 15 F.4th at 1098-99. And in *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, the Federal Circuit relied on *DDR* to find that the claimed invention directed to a technology-based solution overcame existing technological problems "[b]y taking a prior art filter solution" and "making it more dynamic and

efficient." 827 F.3d 1341, 1351 (Fed. Cir. 2016). The Federal Circuit explained that the claims "do not preempt the use of the abstract idea of filtering content on the Internet or on generic computer components performing conventional activities." *Id.* at 1352.

Likewise, here, the claims recite unconventional elements apart from any abstract idea: the interactive video layers, individually or in combination as recited in claim 1, reflect a solution different from prior art template-style displays or traditional pop-up windows or prompts. The claims recite far more than—and do not seek to broadly preempt—TikTok's purported abstract ideas of annotating videos or providing product and social media information. Accordingly, as in the cases discussed above, the claims here are eligible at step two.

Notably, TikTok addresses step two only in passing, and the few arguments it makes fail.

First, TikTok asserts in conclusory fashion that "[t]he claims recite no new hardware, software, or algorithm," and that ShopSee's proposed claim constructions confirm the claims' conventionality. Dkt. 128 at 3-4, 15-16. This argument invites legal error because "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM*, 827 F.3d at 1350. Consistent with the Federal Circuit's holding in *BASCOM*, ShopSee's proposed plain and ordinary constructions are not a concession that the claims lack technical specificity or recite a conventional solution. In fact, TikTok errs in failing to consider that the first and second interactive video layers—individually or in combination with other elements—are the unconventional elements of the claim. In particular, the second interactive video layer, which comprises "a social media portion" allowing a user to "maintain[] and toggle[] between a plurality of different conversations" while in the streaming video environment was not commonplace in the art at the time. *See* '316 patent at cl. 1, 20:4-21:25. TikTok points to no evidence to show otherwise.

Second, TikTok's criticism that the claims merely recite "desirable outcomes for achieving a commercial objective (increasing revenue)," Dkt. 128 at 15, is incorrect and unsupported, as discussed. *See supra* at 9, 12-13. Claim 1, for example, does not recite "increasing revenue" or the commercial advantages of the claimed invention—it recites a specific technological solution, which ultimately yields commercial and technical benefits. Even if an invention "was engineered

in the context of retaining potential customers," as TikTok erroneously claims, the '316 patent may still "claim[] a technical way to satisfy an existing problem." *BASCOM*, 827 F.3d at 1351.

Third, TikTok's analysis fails to consider the technological improvement in view of the entire '316 patent specification and merely cites select portions out of context. TikTok misreads the specification by contending that it only discusses generic hardware and software. Dkt. 128 at 15-16. "[I]t is appropriate to use the specifications to inform [the court's] understanding of the claimed invention and the technological solution and how the elements in the claim functioned together" as part of the step two analysis. *BSD Crown, Ltd. V. Amazon.com, Inc.*, No. 3:23-cv-00057-WHO, 2024 WL 332887, at *9 (N.D. Cal. Jan. 29, 2024) (citing *Mentone Sols. LLC v. Digi Int'l Inc.*, No. 2021-1202, 2021 WL 5291802, at *5 (Fed. Cir. Nov. 15, 2021)). Here, the specification explains that the "interactive video layers are specific to the current disclosure and are not meant to encompass traditional television guide layers, channel navigation layers, TV show or movie information layers, or closed captioning layers." '316 patent at 14:13-17. Specifically, it explains: "The interactive layers are a plug-in, non-invasive feature that can be added to any media site, which requires no additional or very few architecture requirements on the part of the subscriber/host of the media site." *Id.* at 4:21-25. The specification's references to well-known hardware and software components (e.g., user interfaces, wireless interfaces, servers) describe the environment in which the invention operates, not the invention itself. *Cf. CosmoKey*, 15 F.4th at 1098 (holding that the district court "erred in its interpretation" by misreading the specification's discussion of the inventive steps as concessions of conventionality). The fact that the patented invention integrates with existing platforms is a feature, and is separate from the unconventional interactive video layers recited in the claims—it is not a concession of conventionality.

Fourth, TikTok misapplies this Court's findings in *ART*, which are distinguishable here. Dkt. 128 at 17. Fatal in step two was ART's reliance on allegations in its deficient complaint and its own admissions. Specifically, this Court found that "the complaint lack[ed] supporting factual allegations sufficient to defeat the motion to dismiss, instead using functional language, at a high level of generality in reference to 'generic computer components." *ART*, 2025 WL 2772608, at *7-8. This Court further found that "ART acknowledges that the processes relevant to its patents

existed previously," *id.*, which precluded any finding of an unconventional, technological improvement. That is not the case here, where the '316 patent and the FAC consistently explain why the claimed invention *is* a technological improvement. *See supra* at 2-3; *infra* at 21.

Fifth, TikTok also incorrectly dismisses the dependent claims, which build on the unconventional technological improvement. Dkt. 128 at 17. The dependent claims further recite aspects of the interactive video layers and additional video layers that are similarly tied to providing information to the user without taking the user out of the streaming video environment. *See, e.g.*, '316 patent at cl. 2 ("enabling the user to present the video data with or without the first interactive video layer being turned on or off"), cl. 9 ("providing a third interactive video layer"), cl. 11 ("wherein the video data includes a third interactive video layer"); *see also Berkheimer*, 881 F.3d at 1365-66, 1370 (dependent claims provide meaningful additional details that raised at least a genuine issue of material fact); *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1369 (Fed. Cir. 2020) (finding that dependent claims "further specify the physical features or operation of the device of claim 1" and "narrow[] the device's specific technical features or operations").

Even if this Court finds that the subject matter of the '316 patent is directed to an abstract idea under step one, the claims are eligible at step two—and TikTok fails to establish otherwise by clear and convincing evidence for all claims. As such, the Court should deny TikTok's motion.

### B. At Minimum, Factual Questions Preclude Granting TikTok's Motion

At minimum, this Court should deny TikTok's motion because there are significant factual disputes that cannot be resolved on a Rule 12(c) motion (much less resolved against ShopSee), discovery is necessary to address those questions, and claim construction remains ongoing.

First, the '316 patent specification and ShopSee's FAC raise multiple material factual issues that preclude finding the claims ineligible at this stage under binding precedent. The Federal Circuit has repeatedly held that factual disputes regarding whether the claimed elements were well-understood, routine, or conventional cannot be decided against the patentee on the pleadings. As discussed, in *Aatrix*, the Federal Circuit found that the patentee's "allegations as to facts" that the claimed data file reflects "an improvement in the importation of data from third-party software applications" "precluded the court's conclusion that the claimed data file is a well understood and

routine component and function of a computer." 882 F.3d at 1129 (internal quotations omitted). There, the patentee's "concrete allegations" and reference to the patent's "specification describ[ing] the structure of the data file" raised factual issues precluding dismissal. *Id.* at 1128-30. As another example, in *Cellspin*, the Federal Circuit considered the patentee's allegations regarding unconventionality "against th[e] backdrop" of prior art devices that the patentee argued were inferior to the claimed device structure described in the patent specification. 827 F.3d at 1316-17 (holding that the district court erred in not considering the claimed invention's "various benefits over prior art systems"). As yet another example, in *Coop. Ent., Inc. v. Kollective Tech., Inc.*, the Federal Circuit found that "allegations in the complaint regarding the claims" and the "patent's written description create[d] a plausible factual issue regarding the inventiveness of the dynamic P2P configuration" claimed. 50 F.4th 127, 133 (Fed. Cir. 2022); *see also Berkheimer*, 881 F.3d at 1369 (holding that district court improperly granted summary judgment because asserted improvements, which were "captured in the claims, create[d] a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities").

The same is true here: the '316 patent specification and FAC raise key factual issues that preclude dismissal at the Rule 12 stage. As discussed, the specification describes the shortcomings of the existing state of the art of online streaming technology, which either (a) did not provide any additional information of interest to the user or offer interactivity, or (b) interrupted the online streaming. *See* '316 patent at 1:30-37, 2:37-39. The claimed invention solved those problems with interactive video layers that offered user interaction while being "integrate[d] within the entertainment without interruption of the entertainment and is immune to ad blocking. *Id.* at cl. 1, 2:13-21. ShopSee's allegations in the FAC likewise explain that specific claimed technological improvement. For example, ShopSee alleges that the "claims of the '316 patent are directed to a technological invention through creation of the interactive video layers," which provides advancements "over the prior art, which repeatedly interrupted users with windows and prompts." Dkt. 28 ¶ 25. ShopSee further alleges that the claims "recit[e] specific detail regarding how the video media is 'processed' in order to generate the interactive video layers," which "was not routine or conventional in the industry, particularly when combined with the claimed social media

aspects" of the second interactive video layer. *Id.* ¶ 26. Thus, the FAC contains the necessary allegations regarding why the inventions claimed in the '316 patent are patent-eligible. Those factual allegations must be accepted as true at this stage. *Aatrix*, 882 F.3d at 1128. Drawing all inferences in ShopSee's favor, as required at this stage, this Court should find that the '316 patent claims a specific technical solution that constitutes an inventive concept. *See* Dkt. 28 ¶¶ 23-27.

Second, this Court should allow fact and expert discovery on whether—as the specification and FAC state—it was unconventional to use interactive video layers in streaming platforms to introduce user interactivity and address the problems that existed in the prior art regarding delivering information of interest to the user during online streaming. For instance, the prior art—either through advertisements interrupting streaming or static template displays that similarly distracted the user—did not provide the benefit of keeping the user within the streaming video environment. Bederson Decl. ¶¶ 25-50.[4] Against this background, there is at least a genuine factual dispute as to whether the claimed invention provides unconventional technology. Further, in the context of the increased technological challenges associated with small-screen devices, there is a question of whether the claimed invention is an unconventional, technological improvement. *Id.* at ¶¶ 67-69. And, as explained in the declaration of ShopSee's technical expert, Dr. Bederson, there is a tension between competing principles of user interface design when applied to online streaming, which further bears on whether the claimed invention was not merely routine or well-known. *Id.* at ¶¶ 62-69. At minimum, these existing factual disputes require additional development and cannot be resolved against ShopSee at this stage. *See, e.g.*, *Cellspin*, 927 F.3d at 1318-19 (vacating dismissal in part because patentee "pointed to evidence" regarding the state of the art to show that the claimed techniques were inventive and unconventional); *Fortinet, Inc. v. Forescout Techs., Inc.*, 730 F.Supp.3d 958, 970, 977 (N.D. Cal. Apr. 16, 2024) (denying motion for judgment on the pleadings and deferring ruling on eligibility "until expert testimony can shed light on whether th[e] patent is generic and/or is a technological improvement").

---

[4] The Court need not consider the attached Declaration of Dr. Benjamin B. Bederson to deny TikTok's motion, but it demonstrates the type of evidence that confirms the unconventionality of the claimed technology.

Third, TikTok's assertion that claim construction is a foregone conclusion is incorrect and unsupported. Dkt. 128 at 7. As reflected in the parties' joint case management statement (Dkt. 145), TikTok recently proposed a new construction for a new claim term ("transmitting the first and second interactive layers"), allegedly based on statements that ShopSee made in a related IPR.[5] Notably, TikTok waited to raise this new term for construction until after filing this Rule 12(c) motion. Ex. 3 at 1, 11 (Apr. 30, 2025 email and attachment raising new construction); Dkt. 145 at 2-3. Setting aside the propriety of TikTok's belated claim construction arguments, there is no dispute that *TikTok* introduced an unresolved issue of claim construction for which *TikTok* now seeks supplemental briefing. TikTok's about-face—and the potential need for factual findings underlying its new construction—underscores that further record development is warranted. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2014) ("courts will need to make subsidiary factual findings about that extrinsic evidence").

In sum, the '316 patent itself and the FAC at least raise several factual questions that require additional record development and—especially in light of the outstanding claim construction issues—preclude granting TikTok's Rule 12(c) motion.

**C. Any Grant Should Be With Leave To Amend**

Under *Aatrix*, if this Court grants TikTok's motion, it should be without prejudice and with leave to amend. 882 F.3d at 1125 (finding that the district "err[ed] when it denied leave to amend" to address § 101). Courts in this District—including this Court—have followed *Aatrix* in granting Rule 12(c) motions with leave to amend. *See, e.g.*, *ART*, 2025 WL 2772608, at *8; *directPacket Rsch., Inc. v. Polycom Inc.*, No. 3:19-cv-03918-JD, 2023 WL 6301066 at *8 (N.D. Cal. Sept. 26, 2023); *Broadcom Corp. v. Netflix Inc.*, 677 F. Supp. 3d 1010, 1025 (N.D. Cal. 2023). As this Court explained in granting leave to amend in *ART*, even if the claims appear ineligible, "[l]eave should be freely given." 2025 WL 2772608, at *8 (collecting cases); *see also Broadcom*, 677 F.

[5] TikTok does not identify what statements are the basis for its belated arguments, only that they were in ShopSee's December 16, 2025 patent owner preliminary response. Dkt. 145 at 2. The Director denied institution of the related IPR upon recognizing that TikTok was pursuing different claim construction positions: "Petitioner [TikTok] has stipulated that it will continue to pursue different constructions and abandon the inconsistent construction in district court if the IPR is instituted. This is not in keeping with our precedent, and I decline to modify it to permit this approach." *TikTok, Inc. v. ShopSee, Inc.*, IPR2025-01485, Paper 13 at 2-3 (PTAB Jan. 16, 2026).

Supp. 3d at 1025 (granting leave to amend, even if the plaintiff "may face a challenge" to establish eligibility).

TikTok makes no attempt to establish that granting leave to amend, if necessary, would be futile. As in *Aatrix* and *ART*, there is no basis for concluding that ShopSee could not allege additional facts that, when accepted as true, would confirm patent eligibility. Nor could TikTok identify such a basis. If necessary, ShopSee would include with a second amended complaint the attached expert declaration of Dr. Bederson testifying to the unconventional nature of the claim elements and the technological improvement that they provide. ShopSee may also, if necessary, attach fact witness declarations, which would further provide a basis for stating a plausible claim.

Ultimately, however, amendment is unnecessary because the '316 patent itself—the claim language in light of the specification—makes clear that the invention is patent eligible, as in *DDR* and the other cases discussed above. And at minimum, there are several factual disputes that preclude finding the claims ineligible at the Rule 12(c) stage.

## V. CONCLUSION

ShopSee respectfully requests that the Court deny TikTok's motion for judgment on the pleadings or, alternatively, grant ShopSee leave to amend.

Dated: May 8, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

*/s/ Gabriel K. Bell*

Brett M. Sandford (SBN 302072)
Allison Harms (SBN 299214)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
brett.sandford@lw.com
allison.harms@lw.com

Matthew J. Moore (*pro hac vice*)
Gabriel K. Bell (*pro hac vice*)
Tiffany C. Weston (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200

Facsimile: (202) 637-2201
matthew.moore@lw.com
gabriel.bell@lw.com
tiffany.weston@lw.com

Kimberly Q. Li (*pro hac vice*)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facisimile: (617) 948-6001
kimberly.li@lw.com

*Counsel for Plaintiff ShopSee, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 8th day of May, 2026.

*/s/ Gabriel K. Bell*
Gabriel K. Bell (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
gabriel.bell@lw.com

*Counsel for Plaintiff ShopSee, Inc.*