United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOPSEE, INC.,<br>Plaintiff,<br>v.<br>TIKTOK INC.,<br>Defendant. | Case No. 26-cv-00703-AMO<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 128 |

This is a patent infringement dispute. Defendant TikTok Inc.'s ("TikTok") motion for judgment on the pleadings was heard before this Court on August 6, 2026. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court **GRANTS** TikTok's motion for the following reasons.

## I. BACKGROUND

Plaintiff ShopSee Inc.'s ("ShopSee") U.S. Patent No. 11,134,316 ("the '316 Patent"), issued September 28, 2021, is titled "Integrated Shopping Within Long-Form Entertainment." Dkt. No. 28-1 (" '316 Patent") at 2. The '316 Patent claims to present a technological solution that provides "seamless entertainment" to the user by "generating several interactive video layers." '316 Patent at 2:8-10, 2:22-32; *see also* First Am. Compl. (Dkt. No. 28, "FAC") ¶¶ 24-26. Specifically, a first interactive video layer allows the user to view items of interest "that have been integrated into the entertainment while the user views the layer" and underlying video media. '316 Patent at 2:32-37. A second interactive video layer allows users to communicate with other users "while watching a television show or movie," without having to leave the video media and "[a]s users view the online streaming entertainment." *Id.* at 2:39-44. These interactive video

layers allow the user to remain in the streaming video environment without "permanent interruption such as windows or prompts." *Id.* at 2:37-39. This layering "eliminat[es] the need for a second screen" because the user "is not directed to another website" and "never leaves the video media." *Id.* at 3:26-42. The patent specification describes:

> A unique method of aligning the interests of viewers, media companies, and advertisers into a seamless entertainment and marketing experience . . . creating one or more interactive video layers that are integrated into a form of entertainment and delivered to users as an online streaming and advertising service. . . . [a]s users view the online streaming entertainment with one of the interactive video layers turned on, they are able to purchase the products and/or services that have been integrated into the entertainment while the user views the layer and entertainment on their personal device.

*Id.* at 2:8-13; 2:32- 37. ShopSee alleges TikTok infringed on at least claim 18 of the '316 Patent. FAC ¶ 46. Claim 18 recites as follows:

> 18. A computer-implemented system comprising: a digital processing device comprising: at least one processor, an operating system configured to perform executable instructions, a memory, and a computer program including instructions executable by the digital processing device to create an application for providing information on items, services, or songs in a video media, the application comprising:
>
> a) a software module for receiving a request for the generation of information regarding items, services, or songs presented in a video media from a first processing device of a user;
>
> b) a software module for linking the items, services, or songs with marketing and/or purchasing information;
>
> c) a software module for the generation of a first interactive layer to display with the video media, wherein said first interactive layer contains the items, services, or songs of interest linked to the marketing and/or purchasing information;
>
> d) a software module for the generation of a second interactive layer to display with the video media and optionally the first interactive layer, wherein the video media, the first interactive layer, and the second interactive layer are configured to be provided to user via the first processing device and to at least one guest via a second processing device, wherein the second interactive layer contains a social media portion controllable by the user via the first processing device, so as to interact with the at least one guest that is also a viewer of the video media through an interface displayed in the second interactive video layer via the second processing device, wherein an interaction between the user and the at least one guest, and past interaction activity between a plurality of users in the social media portion, are displayed in the interface in the second

> interactive video layer, and wherein the user is capable of maintaining and toggling between a plurality of different conversations displayable in the social media portion in the second interactive video layer as an overlay to the video media displayed by the first processing device, wherein the plurality of users either includes the user or does not include the user; and
>
> e) a software module for transmitting the first and second interactive layers to the first processing device of the user.

’316 Patent at 38:10-54.

## II. DISCUSSION

TikTok moves for judgment on the pleadings, arguing Claims 1-19 of the ’316 Patent are ineligible subject matter under Title 35 U.S.C. § 101, and asserting that Claim 1 is representative of the ‘316 Patent. Dkt. No. 128. “After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings.” Fed. R. Civ. P. 12(c). “Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.” *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999)). A Rule 12(c) motion is reviewed using the same standard as a Rule 12(b) motion. *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, the court “accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party.” *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). Rule 12(c) motions, like those brought under Rule 12(b)(6), are generally confined to the four corners of the complaint along with any materials it incorporates. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). “Challenges to patentability,” like the one advanced here, “may be brought based solely on the pleadings, including on a Rule 12(c) motion for judgment on the pleadings.” *Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1045 (N.D. Cal. 2015).

The Patent Act provides for a patent to “[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof [.]” 35 U.S.C. § 101. However, there is an important implicit exception: “Laws of nature, natural phenomena, and abstract ideas are not patentable.” *Alice Corp. Pty. Ltd. v. CLS Bank Int’l*,



United States District Court
Northern District of California

573 U.S. 208, 216 (2014). These three categories of subject matter are excepted from patent-eligibility because "they are the basic tools of scientific and technological work," which are "free to all [people] and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) (citations omitted). The Supreme Court explained that allowing patent claims for such purported inventions would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Id.* However, the Court also cautioned that "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 573 U.S. at 217 (alteration, internal quotation marks, and citation omitted). Accordingly, courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.*

In *Alice*, the leading case on Section 101 patent-eligible subject matter, the U.S. Supreme Court refined the "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts" originally set forth in *Mayo*. *Alice*, 573 U.S. at 217. This analysis, generally known as the "*Alice*" framework, proceeds in two steps. First, courts "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* at 217. If the claims at issue reflect abstract ideas or other unpatentable concepts, the analysis then proceeds to step two. *Id.* At step two, courts ask whether the claims at issue reflect an "inventive concept," described as "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.' " *Id.* at 218 (alterations in original) (citations omitted). The step two analysis requires consideration of the "elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 218 (citations omitted); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (describing "the now familiar two-part test described by the Supreme Court in *Alice*").

Before proceeding through *Alice*'s two-step framework, the Court first considers whether it can focus on a single representative claim of the '316 patent.

United States District Court
Northern District of California

**A. Representative Claim**

TikTok contends Claim 1 is representative of the relevant patent claims because "independent Claims 17 and 18 recite the same functional steps[.]" Dkt. No. 128 at 11-12. "[C]laims may be treated as 'representative' if a patentee makes no 'meaningful argument for the distinctive significance of any claim limitations not found in the representative claim' or if the parties agree to treat a claim as 'representative.' " *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 549 F. Supp. 3d 1247, 1256 (W.D. Wash. 2021). "Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim[.]" *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). In response to TikTok's argument that Claim 1 is representative, ShopSee claims TikTok "incorrectly dismisses the dependent claims" but fails to make any meaningful argument for why Claims 17 and 18 are distinct from Claim 1. Dkt. No. 146 at 24. In the absence of substantive reasons explaining the distinctive significance of the claim limitations, the two-step analysis that follows focuses on Claim 1 exclusively.

**B. *Alice* Step One**

At *Alice* step one, a party challenging the validity of a patent must show the asserted claims are directed to an abstract idea. *Alice*, 573 U.S. at 218. Claims are not abstract at step one if they are "directed to a specific improvement" or "to a specific implementation of a solution to a problem." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338, 1339 (Fed. Cir. 2016). Importantly, the Federal Circuit has warned against "overgeneralizing claims in the § 101 analysis" because "characterizing the claims at a high level of abstraction that is untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (quoting *Enfish*, 822 F.3d at 1337).

A claim's direction toward "mental processes that 'can be performed in the human mind' or 'using a pencil and paper' " signals a "telltale sign of abstraction." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (citations omitted). Relatedly, a "claimed method's similarity to 'fundamental . . . practices long prevalent' is yet another clue that the

claims may be abstract and unpatentable." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (alteration in original). "[T]he *claim itself* must 'sufficiently capture the inventors' asserted technical contribution to the prior art by reciting *how* the solution specifically improves the function of prior art.' " *Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1020 (N.D. Cal. 2020) (emphasis in original), *aff'd*, 4 F.4th 1342 (Fed. Cir. 2021) (citing *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150-51 (Fed. Cir. 2019)). "In cases involving software innovations, [the step-one] inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies [as] an abstract idea for which computers are invoked merely as a tool." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (citation omitted).

Here, the '316 Patent is directed to an abstract idea. ShopSee claims that the '316 Patent solves a common problem with a technological solution by "generating several interactive video layers" which "allow the user to remain in the streaming video environment" while accessing other content and therefore "eliminat[es] the need for a second screen." Dkt. No. 146 at 7-8; *see also* '316 Patent at 2:23; 2:32-37, 3:38-40. On its face, Claim 1 recites in part:

> A method for providing information on items, services, or songs in a video media comprising:
>
> a) receiving the video media having a plurality of visual or audio objects in one or more frames of the video media;
>
> b) processing the video media to generate a first interactive video layer, . . .
>
> c) generating a video data comprising the video media, the first interactive video layer, and a second interactive video layer, wherein the video data is configured to be provided to a user via a first media playback device . . . ; and
>
> d) distributing information associated with one or more items, services, or songs in the video media to the user.

'316 Patent, 35:58-36:38. In other words, Claim 1 provides existing information to the user by processing the media into one or more interactive layers. These layers "merely organize and arrange sets of visual information into layers and then present said layers on a generic display device" and are thus abstract. *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1380



United States District Court
Northern District of California

(Fed. Cir. 2022). The "receiving," "processing," generating," and "distributing" of Claim 1 through layering recites nothing more than "generalized steps of collecting, analyzing, and presenting information, using nothing other than the conventional operations of generic computer components[.]" *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1293 (Fed. Cir. 2024) (collecting cases).

ShopSee contends the claims "are directed to a specific improvement in streaming technology that enhances computer video interface capabilities," ultimately providing "a solution that eliminates interruptions to the user that were otherwise common (but problematic) for online or streaming video media[.]" Dkt. No. 146 at 11. Further, ShopSee argues that the claims improve computer functionality because "they recite generating interactive video layers which involve processing the video media itself through multiple technical steps, and dynamically displaying selectable visual indicators associated with items of interest as the video media." *Id.* at 17. However, the language of Claim 1 does not assert "an improvement in computers as tools," but rather reflects an "independent abstract idea[] that use[s] computers as tools." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). The '316 Patent is directed to a generic layering of video with other media, and Claim 1 accordingly reflects an abstract concept. *See Beteiro*, 104 F.4th at 1356 ("[C]laims . . . drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results . . . are almost always found to be ineligible for patenting under Section 101.").

ShopSee resists this conclusion by analogizing Claim 1's interactive layers to those found patent eligible in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018). Dkt. No. 146 at 12. However, *Core Wireless* is distinguishable in several ways. In that case, the court noted the patent "disclose[d] a specific manner of displaying a limited set of information to the user," which "improved user interface for electronic devices, particularly those with small screens[.]" *Core Wireless*, 880 F.3d at 1363. The court found a specific improvement over the prior art through its detailed limitations and restraints on the manner and type of data that could be displayed to the user. *Id.* But in this case, the claimed invention does not address any specific type of device or interface improvement. On the contrary, the patent generally claims

interactive layers suitable for many devices such as "server computers, desktop computers, . . . mobile smartphones, . . . video game consoles, and vehicles." '316 Patent at 26:30-38. The patent specification and ShopSee indeed make clear that these interactive layers "are not meant to encompass traditional television guide layers, channel navigation layers, TV show or movie information layers, or closed captioning layers[.]" Dkt. No. 146 at 23; '316 Patent at 14:14-18. ShopSee advances that "the purpose of the invention" is to use "interactive video layers . . . that integrate[] within the entertainment without interruption of the entertainment and is immune to ad blocking." Dkt. No. 146 at 14-15; '316 Patent at 2:13-18. However, "[s]tanding alone, the act of providing someone an additional set of information without disrupting the ongoing provision of an initial set of information is an abstract idea." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344 (Fed. Cir. 2018). This is precisely what the '316 Patent claims to do – provide interactive layers containing additional information without disrupting the ongoing video media. Claim 1 of the patent thus reflects an abstract idea.

Because the '316 Patent is directed at an abstract idea, the Court proceeds to *Alice*'s second step – to determine whether the claims contain an inventive concept.

### C. *Alice* Step Two

At step two of the *Alice* framework, the Court must assess whether the patent "contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (internal quotation marks & citation omitted). Patent claims that are directed to an abstract idea may nonetheless be patentable if the claims contain an "inventive concept," either individually or taken together. *Alice*, 573 U.S. at 221. The inventive concept must add "significantly more" to the abstract idea to prove patentable. *Mayo*, 566 U.S. at 72-73. "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea" where those components simply perform their "well-understood, routine, conventional" functions. *TLI Commc'ns*, 823 F.3d at 613. "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that "must be proven by

clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). This inquiry "goes beyond what was simply known in the prior art." *Id.* at 1369.

Here, ShopSee advances the '316 Patent presents a specific, unconventional, and inventive technological concept. *See* Dkt. No. 146 at 19. ShopSee avers that, when the '316 Patent was filed in 2016, "conventional techniques involved static template displays, interruptive pre-roll advertisements, or redirecting users away from video content – none of which provided the dynamic, immersive, and interactive experience . . . [that] the '316 patent claims." *Id.* at 20; '316 Patent at 2:37-39. Additionally, ShopSee claims "the ability to maintain and toggle between interactions with different users – all without interrupting video media" is unique and unconventional. Dkt. No. 146 at 20.

ShopSee analogizes to *DDR Holding* to assert the inventive concept of the '316 Patent. Dkt. No. 146 at 6, 17-18, 20-21. In *DDR Holding*, the Federal Circuit found certain claims patent eligible at *Alice* step two because the patent there addressed "the problem of retaining website visitors that . . . would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink." *DDR Holding*, 773 F.3d at 1257. The patent at issue in that case accomplished retention of website visitors by utilizing a specific "out-source provider . . . which directs the visitor to an automatically-generated hybrid web page[.]" *Id.* The court found the asserted patent to be an inventive concept for "resolving [a] particular Internet-centric problem," but cautioned "that not all claims purporting to address Internet-centric challenges are eligible for patent." *Id.* at 1258-59.

In light of that caution, this Court finds the patent at issue in *DDR Holding* distinguishable from the '316 Patent because no specific implementation details are claimed here – ShopSee's claim of inventiveness to solve an Internet-based problem does not suffice to satisfy step two of the *Alice* analysis. The '316 Patent claims' "interactive video layer[s]" allow users who are streaming video media to "maintain[] and toggl[e] between a plurality of different conversations displayable . . . and distribut[e] information associated with the one or more items, services, or songs[.]" Dkt. No. 146 at 15; '316 Patent Cl. 1. However, the "patent's solution of organizing and displaying information in layers" is not an inventive concept and only restates the abstract

idea. *IBM*, 50 F.4th at 1382. And its description of "processing" merely tracks the claim language without identifying any unconventional algorithm, protocol, or technique. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1365-66 (Fed. Cir. 2023) (conclusory allegations of inventiveness insufficient to survive step two analysis). The '316 Patent thus does not present a specific, inventive technological concept that reaches beyond the prior art to resolve the problem, it merely applies an abstract idea (interactive layers) to an existing media display. *See id.* Though ShopSee offers the declaration of an expert in support of its opposition brief to demonstrate that, at minimum, a factual dispute remains regarding the improvements the '316 Patent made over the prior art, the Court cannot consider such external evidence at this Rule 12(c) stage. *See Lee*, 250 F.3d at 688.

Thus, the '316 Patent does not claim an inventive concept that transforms the abstract idea of processing, providing, and displaying existing information into interactive visual layers into a patent-eligible concept. Accordingly, the Court grants TikTok's motion for judgment on the pleadings.

**D. Leave to Amend**

"[A]lthough Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend and to simply grant dismissal of the action instead of entry of judgment." *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citation omitted). Indeed, in *Harris v. County of Orange*, the Ninth Circuit affirmed a district court's dismissal under Rule 12(c) but reversed for failing to grant leave to amend. 682 F.3d 1126, 1131, 1134-35 (9th Cir. 2012). Under Rule 15(a), courts should "freely" grant leave to amend "when justice so requires," i.e., absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)).

Here, ShopSee requests leave to amend if TikTok prevails on the merits of its Rule 12(c) motion. Dkt. No. 146 at 27-28. TikTok argues that amendment would prove futile and should not be permitted. Dkt. No. 149 at 18-21. The Court finds no bad faith, undue delay, or repeated

amendments at issue in this litigation. The Court similarly finds that permitting ShopSee to amend the complaint further will not prejudice TikTok. The Court finds that amendment would prove futile as to step one of the *Alice* framework as a matter of law. On the other hand, the Court cannot find futility as to step two of the *Alice* framework because ShopSee may further develop its factual support for the "inventive concept" in Claim 1 of the '316 Patent. Therefore, the Court will grant leave to amend as to inventiveness.

## III. CONCLUSION

For the foregoing reasons, including the Court's determination that the '316 Patent fails the *Alice* test for patentability, the Court **GRANTS** TikTok's motion. The Court further **GRANTS** ShopSee's request for leave to file a further amended complaint in accordance with Ninth Circuit precedent. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) (recognizing that Ninth Circuit precedent requires leave to amend be granted freely unless amendment would be futile). ShopSee's further amended complaint shall be filed by September 11, 2026. No additional parties or claims may be added without leave of Court or stipulation of Defendant.

**IT IS SO ORDERED.**

Dated: August 13, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**